ZANTOP INTERNATIONAL AIRLINES,
INC., Plaintiff,

v.

NATIONAL MEDIATION BOARD, et al.

Civ. A. No. 81–60253.

United States District Court,
E. D. Michigan, S. D.

July 21, 1982.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This case is before the court on cross-motions for summary judgment by the plaintiff Zantop International Airlines, Inc. and the defendants National Mediation Board (NMB) and Rowland K. Quinn, Executive Secretary of the National Mediation Board. For the reasons given below, the defendants' motion is granted and the plaintiff's motion is denied.

### FACTS

The facts are not in dispute. Zantop Airlines is an air cargo service based at Willow Run Airport in Ypsilanti, Michigan. In September, 1981, the National Mediation Board conducted a secret mail ballot representation election among two groups of Zantop's employees. The results of that election were as follows:

|  | Pilot/ Co-Pilot Class | Flight Engineers Class |
|---|---|---|
| United Automobile Workers (UAW) | 88 | 33 |
| Other Unions | 4 | 3 |
| Void Ballots | 7 | 4 |
| Didn't Cast Ballots | 82 | 31 |
| Total Eligible Voters | 181 | 71 |

In counting ballots, the NMB first determines whether a majority of eligible voters favors *some* representation. If a majority votes against any representation, either by returning void ballots [1] *or* by not voting at all, no representative is certified. If a majority of eligible voters does favor *some* representation,[2] the NMB certifies the representative receiving a majority among the valid ballots cast.

In this case, 92 valid ballots were cast in the pilot/co-pilot class (88 for the UAW and 4 for other unions). Since 92 is a majority of the 181 eligible voters, the NMB certified the UAW which received the vast majority of the valid ballots cast.

Likewise, in the case of the flight engineers, 36 valid ballots were cast (33 for the

Robert M. Vercruysee, Gregory S. Muzingo, Butzel, Long, Gust, Klein & Van Zile, Detroit, Mich., for plaintiff.

Karl R. Overman, Asst. U. S. Atty., Detroit, Mich., Sara V. Greenberg, Atty., Dept. of Justice, Civil Division, Washington, D. C., for defendants.

[1] A void ballot is one with "No" or "No union" written across the face of the ballot.

[2] Voting in favor of some representation is termed "casting a valid ballot" in the parlance of the NMB.

UAW and 3 for other unions). Since 36 is a majority of the 71 eligible voters, the NMB again certified the UAW which received a majority of the 36 valid ballots cast.

The ballot mailed to Zantop employees by the NMB did not contain a box for a "no union" vote. It contained a box for the UAW and a box for "any other organization or individual." The instructions on the ballot state, "No employee is required to vote. If less than a majority of the employees cast valid ballots, no representative will be certified."

In this action, plaintiff Zantop challenges 1) the NMB's certification of the UAW as contrary to the specific statutory language of Section 2, Fourth of the Railway Labor Act, 45 U.S.C. § 152, Fourth, and 2) the NMB's failure to fully describe its certification procedure to Zantop's employees as a breach of the NMB's duty to investigate, 45 U.S.C. § 152 Ninth.

Assuming, without deciding, that Zantop has standing to bring this suit, its arguments must be rejected. Section 2, Fourth of the Railway Labor Act ("Act") provides:

> Employees shall have the right to organize and bargain collectively through representatives of their own choosing. *The majority of any craft or class* of employees shall have the right to determine who shall be the representative of the craft or class for the purposes of this Act. (emphasis added) 45 U.S.C. § 152, Fourth.

According to Zantop, "majority" in this statute plainly and unequivocally means "absolute majority of all eligible voters." This simply is not the case. "Majority of any craft of class" is sufficiently ambiguous that it must be construed like most other statutory language. It might mean majority of all eligible voters; it might mean majority of those voting; or it might mean what the NMB has interpreted it to mean.

■ The important point is that the NMB has been given the discretion to determine who shall be the employees' representative, by any "appropriate method", and "in such manner as shall insure the choice of ... the employees without inter-ference, influence, or coercion exercised by the carrier." 45 U.S.C. § 152, Ninth. That discretion includes the authority to reasonably construe the language of the statute. *Switchmen's Union of North America v. National Mediation Board*, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61 (1943); *Brotherhood of Railway & Steamship Clerks v. Association for the Benefit of Non-Contract Employees* ("Railway Clerks") 380 U.S. 650, 85 S.Ct. 1192, 14 L.Ed.2d 133 (1965).

■ Furthermore, the Supreme Court long ago rejected the contention that Section 2, Fourth of the Act *requires* that a representative be selected by the votes of a majority of eligible voters. *Virginian Railway Co. v. System Federation No. 40*, 300 U.S. 515, 560, 57 S.Ct. 592, 605, 81 L.Ed. 789 (1937).

■ Under these circumstances, where the NMB has not acted "in excess of its delegated powers and contrary to a specific prohibition in the Act", *Railway Clerks, supra*, at 660, 85 S.Ct. at 1197 [quoting *Leedom v. Kyne*, 358 U.S. 184, 188, 79 S.Ct. 180, 183, 3 L.Ed.2d 210 (1958)], this court is without jurisdiction to hear the case. *Aeronautical Radio, Inc. v. National Mediation Board*, 380 F.2d 624, 627 (D.C.Cir.) *cert. denied*, 389 U.S. 912, 88 S.Ct. 237, 19 L.Ed.2d 260 (1967).

Zantop's second challenge is to the NMB's failure to explain to the voters that a vote for a labor organization other than the UAW could result in that vote being counted as a vote for the UAW. Zantop couches this attack in terms of a breach by the NMB of its statutory duty to investigate.

Section 2, Ninth of the Act provides in part:

> If any dispute shall arise among a carrier's employees as to who are the representatives of such employees designated and authorized in accordance with the requirements of this chapter, it shall be the duty of the *Mediation Board*, upon request of either party to the dispute, *to investigate such dispute* and to certify to both parties, in writing ... the name or names of the individuals or organizations

that have been designated and authorized to represent the employees involved in the dispute, and certify the same to the carrier . . . *In such an investigation,* the Mediation Board shall be authorized to take a secret ballot of the employees involved, or to *utilize any other appropriate method* of ascertaining the names of their duly designated and authorized representatives *in such manner as shall insure the choice of representatives by the employees without interference, influence, or coercion exercised by the carrier.* (emphasis added) 45 U.S.C. § 152, Ninth.

The record in this case makes clear that the NMB "investigated" the representation dispute involving Zantop's employees *before* it conducted the secret ballot representation election. The designation of the two separate crafts or classes—the pilots/co-pilots, and the flight engineers—was a part of that initial Section 2, Ninth investigation.

■ As for the instruction on the ballot, the NMB is given very broad discretion by Section 2, Ninth of the Act to conduct representation elections in the manner it deems proper. *Railway Clerks, supra,* at 668–669, 85 S.Ct. at 1201–1202. The only statutory caveat is that it insure freedom from carrier interference. *Railway Clerks, supra,* at 669, 85 S.Ct. at 1202. There is no allegation here that the NMB did not do that. Indeed, it would be strange if there were since this action is pressed by the carrier itself.

■ Thus, there has been no showing that the NMB acted in excess of its statutory authority by failing to advise Zantop's employees that a vote for a labor organization other than the UAW could result in that vote being counted as a vote for the UAW.[3] Absent such a showing, the Board's actions are not subject to judicial review. *Railway Clerks, Switchmen's Union.*

The court does not mean by this opinion to express approval of the Board's procedures. By this procedure, an employee who is opposed to any union, is not given the opportunity to vote his or her conviction as between contending unions. On the contrary, the court finds the Board's procedures awkward and confusing. A far better method for determining majority wishes would be a two-step procedure. In step one, the employees would choose between representation and no representation. If a majority favored representation, a second election would be held in which the employees would choose between competing unions. This procedure would insure that the employees' wishes would be made known, without making any assumptions about the meaning of a ballot cast for a non-majority union.

However, the National Mediation Board, not this court, has the authority to conduct representation elections under the Railway Labor Act, and the Board, not this court, has been given the discretion to work out the details of those elections. The form of ballot used in this case was used in *Railway Clerks.*

Since there is no genuine issue as to any material fact, and since the defendant is entitled to judgment as a matter of law, Fed.R.Civ.P. 56(c), the defendants' motion for summary judgment is granted and the plaintiff's cross-motion for summary judgment is denied.

So ordered.

---

3. There is little dispute that Zantop's employees were well aware of the consequences of a vote for a labor organization other than the UAW. On at least three occasions, Zantop's president mailed out campaign literature to his employees containing statements such as this: "REMEMBER THAT A BALLOT CAST FOR ANY PERSON OR LABOR ORGANIZATION OTHER THAN THE UAW, IS A VALID BALLOT AND MAY BE COUNTED FOR REPRESENTATION BY THE UAW EVEN THOUGH THE UAW WAS NOT YOUR SELECTION." Exhibit 5 to Defendant's Motion. However, since Zantop has called into question the Board's statutory duty, the court has not considered this in making its determination.