732 F.2d 517
 116 L.R.R.M. (BNA) 2030, 100 Lab.Cas. P 10,984
 ZANTOP INTERNATIONAL AIRLINES, INC., Plaintiff-Appellant,
v.
NATIONAL MEDIATION BOARD, an independent administrative
agency of the United States; and Rowland K. Quinn, Jr., in
his capacity as Executive Secretary of the National
Mediation Board, Defendants-Appellees.
 No. 82-1657.
 United States Court of Appeals,
Sixth Circuit.
 Argued Feb. 23, 1984.
Decided April 19, 1984.
 
 Robert M. Vercruysse, Gregory S. Muzingo (argued), Butzel, Long, Gust, Klein, Van Zile, Detroit, Mich., for plaintiff-appellant.
 Leonard R. Gilman, U.S. Atty., Detroit, Mich., Sarah Greenberg, Dept. of Justice, Robert S. Greenspan, Margaret E. Clark, Edward R. Cohen (argued), Appellate Staff/Civ. Div. Dept. of Justice, Washington, D.C., for defendants-appellees.
 Before LIVELY, Chief Judge, JONES, Circuit Judge and BERTELSMAN, District Judge.*
 LIVELY, Chief Judge.
 
 
 1
 This case arises under the Railway Labor Act, 45 U.S.C. Secs. 151-188 (1976) (The Act) and concerns the scope of judicial review of actions of the National Mediation Board (the Board). Specifically, the question is whether a court may enjoin the certification of a union as the exclusive collective bargaining representative of the employees of an air carrier. The district court concluded that the Board's action was not subject to judicial review because there was no showing that the Board acted in excess of its statutory authority. Zantop International Airlines, Inc. v. National Mediation Board, 544 F.Supp. 504 (E.D.Mich.1982).
 
 I.
 
 2
 Zantop International Airlines, Inc. (Zantop) is an air cargo service operating principally from the Detroit-Willow Run Airport in Ypsilanti, Michigan. On June 23, 1981 the International Union, United Automobile, Aerospace and Agricultural Workers of America (UAW) filed an application with the Board pursuant to Section 2, Ninth of the Railway Labor Act, 45 U.S.C. Sec. 152, Ninth (1976)[1] requesting that the Board investigate the existence of an alleged representation dispute among Zantop's flight crew members and determine their representative for collective bargaining purposes. At this time, these employees were unrepresented. The Board determined that two separate classes or crafts were involved--pilots and co-pilots comprised one craft or class and flight engineers the other. With Zantop's agreement, the Board authorized a secret mail ballot election among each group of employees.
 
 
 3
 The ballot used by the Board instructed voters:
 
 
 4
 No employee is required to vote. If less than a majority of the employees cast valid ballots, no representative will be certified.
 
 
 5
 Below this instruction appeared two boxes. A voter was directed to mark the first box to indicate a desire to be represented by the UAW. A voter who wished to be represented by "any other organization or individual" was to write in the name of that organization or individual and mark the second box. The ballot did not contain a box for a "no union" vote.
 
 
 6
 On September 21, 1981, the ballots in both employee groups were counted. The results were as follows:
 
 
 7
 Flight
 Pilot/Co-Pilots Engineers
UAW 88 33
Other Representative 4 3
Void Ballots 7 4
Ballots Not Received 82 31
 --------------- ---------
Total Eligible Voters 181 71
 
 
 8
 The "void" ballots were ones on which "No" or "No Union" was written or on which more than one box was marked. The write-in votes cast by the pilots and co-pilots for other representatives included three for an in-house employees association and one for the Air Line Pilots Association (ALPA), a national labor union. Similarly, the three write-in votes cast by flight engineers included one each for a Zantop employee, for ALPA and for the International Brotherhood of Teamsters.
 
 
 9
 Zantop petitioned the Board to deny certification on the ground that less than a majority of eligible employees in each group had voted for the UAW. It claimed that certification of the UAW violated Section 2, Fourth of the Railway Labor Act which provides in pertinent part:
 
 
 10
 Employees shall have the right to organize and bargain collectively through representatives of their own choosing. The majority of any craft or class of employees shall have the right to determine who shall be the representative of the craft or class for the purposes of this chapter.
 
 
 11
 45 U.S.C. Sec. 152, Fourth (1976). In support of its petition, Zantop submitted affidavits of two employees who had voted in the election stating that the voters were not informed by the Board that a ballot cast for a representative other than the UAW could be counted toward representation by the UAW. The petition asked that the election be set aside because the Board had not clearly explained to voters how their votes would be considered in determining a majority choice.
 
 
 12
 When the Board denied Zantop's petition and certified the UAW as representative of all flight crew members Zantop filed this action in the district court, seeking a declaratory judgment and injunctive relief. Zantop alleged that the Board's certification of the UAW, absent election by a majority of eligible voters, violated the provision of Section 2, Fourth that "[t]he majority of any craft or class of employees shall have the right to determine who shall be [their] representative...." It also claimed that the certification violated Section 2, Ninth which directs the Board to investigate a representation dispute and determine the collective bargaining representative "in accordance with the requirements of this chapter...." See 45 U.S.C. Sec. 152, Ninth (1976). Zantop further charged that the Board had breached its statutory duty to investigate and determine a representative by failing to advise voters that a vote cast for a representative other than the UAW "could result in that vote being counted as a vote for the UAW...." (Emphasis in original).
 
 
 13
 The defendants (the Board and its executive secretary) responded with a motion to dismiss or, in the alternative, for summary judgment. The motion asserted that the court lacked subject matter jurisdiction and that the complaint failed to state a claim upon which relief could be granted. The defendants also challenged Zantop's standing to seek review of the Board's determination.
 
 
 14
 The district court, after a hearing on the motion, concluded, first, that the Board had been granted discretion by Section 2, Ninth, to determine by any "appropriate method" who shall be the employees' representative and that this discretion included the authority to reasonably construe the meaning of "majority" in Section 2, Fourth. 544 F.Supp. at 506. Second, it considered the discretion also given the Board by Section 2, Ninth, to conduct elections in the manner it deemed proper as allowing the Board to choose not to inform voters of the precise procedure used to determine election results. See id. at 507. Absent a showing that the Board had acted in excess of its statutory authority or contrary to a specific prohibition in the Act, the court held it lacked jurisdiction to review the Board's certification of the UAW as representative of Zantop's pilots, co-pilots and flight engineers. Id. at 506, 507.
 
 II.
 
 15
 The defendants argued in the district court that Zantop, as a carrier, had no standing to bring this action since the right involved, the right to choose a collective bargaining representative, is that of the employees, not the employer. The district court assumed standing without deciding the question, and the defendants have renewed their contention here. Standing is often a difficult concept to apply, though it involves the fundamental requirement of Article III of the Constitution that federal courts have jurisdiction only to hear actual cases and controversies. Simon v. Eastern Kentucky Welfare Rights Organization, 426 U.S. 26, 37, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976). The defendants contend that Zantop can point to no "injury in fact" which it has suffered by reason of the certification and that it is not within the "zone of interests" protected by Section 2, Fourth and Ninth. See Association of Data Processing Service Organizations v. Camp, 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970).
 
 
 16
 Two courts of appeals have dealt with the issue of a carrier's standing to seek review of a certification by the Board. The Ninth Circuit concluded that a carrier does have limited standing to challenge an action of the Board which requires it to deal with a certified bargaining representative alleged to have been "unlawfully and improperly" certified. International In-Flight Catering Co., Ltd. v. National Mediation Board, 555 F.2d 712, 719 (1977). The Second Circuit agreed in British Airways Board v. National Mediation Board, 685 F.2d 52, 55 (1982). Both courts reasoned that the Supreme Court had implicitly resolved this question in favor of the carrier by reaching the merits of the carrier's claim in Brotherhood of Railway & Steamship Clerks v. Association for the Benefit of Non-Contract Employees, 380 U.S. 650, 85 S.Ct. 1192, 14 L.Ed.2d 133 (1965) (Railway Clerks ). We agree with the reasoning of both courts of appeals and conclude that Zantop does have standing to challenge the certification.
 
 III.
 
 17
 As Judge Newman pointed out in British Airways, "the merits ... in cases of this sort pose an issue of district court jurisdiction." 685 F.2d at 55. Zantop contends that the district court had jurisdiction because its action challenged Board "conduct which directly contravenes an express statutory mandate." That conduct is identified as ignoring the statutory requirement of majority rule in the selection of a bargaining representative. Zantop argues that it is a perversion of the intent of Congress to permit the Board to "construct" a majority by "borrowing" votes cast for one person or organization and adding them to votes cast for another to give that person or organization an "illusory" majority. By this "piggybacking" process, Zantop maintains, the Board violated the majority rule requirement of Section 2, Fourth of the Act. In so doing, Zantop asserts, the Board acted in excess of its delegated powers. Zantop's related argument is that the form of the ballot violated the Board's statutory duty to determine a majority representative since it failed to advise of the "piggybacking" counting procedure. We will consider these arguments together.
 
 A.
 
 18
 In Railway Clerks the form of the ballot was one basis of the objection to the Board's certification. The Supreme Court delineated the limits of jurisdiction to review such choices by the Board as follows:
 
 
 19
 In summary, then, the selection of a ballot is a necessary incident of the Board's duty to resolve disputes. The Act expressly says as much, instructing the Board alone to establish the rules governing elections. Thus, it is clear that its decision on the matter is not subject to judicial review where there is no showing that it has acted in excess of its statutory authority.
 
 
 20
 380 U.S. at 669, 85 S.Ct. at 1202. The Court rejected the argument that the Board exceeded its authority by adopting a ballot which contained no provision for indicating a choice of "no union." Id. at 670, 85 S.Ct. at 1203.
 
 
 21
 As in the present case, the plaintiff's argument in Railway Clerks went beyond its claim that the ballot was defective. It also claimed that the Board should have held a hearing before determining the appropriate craft or class in which the election was held. This claim referred to the Board's duty to investigate the representation dispute. In holding that the district court lacked jurisdiction the Supreme Court concluded that these allegations did not raise issues concerning actions of the Board which were subject to judicial review.
 
 
 22
 In deciding Railway Clerks the Supreme Court followed its decision in Switchmen's Union of North America v. National Mediation Board, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61 (1943). There a union sought separate representation for a group of employees who worked in designated portions of certain rail systems. The Board certified a single representative for employees of the classification throughout the system. The Supreme Court held that the district court had no jurisdiction to review the certification. In so holding it distinguished two earlier cases where review was permitted: Virginian Railway Co. v. System Federation, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789 (1937) and Texas & New Orleans Railroad Co. v. Brotherhood of Railway & Steamship Clerks, 281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034 (1930). The court pointed out that review was permitted in those cases because otherwise a right which Congress had created would have been obliterated:
 
 
 23
 In those cases it was apparent that but for the general jurisdiction of the federal courts there would be no remedy to enforce the statutory commands which Congress had written into the Railway Labor Act. The result would have been that the "right" of collective bargaining was unsupported by any legal sanction. That would have robbed the Act of its vitality and thwarted its purpose. Such considerations are not applicable here.
 
 
 24
 Switchmen's Union, 320 U.S. at 301, 64 S.Ct. at 97. The Court found no threat that the right would be destroyed by the Board's action in the case before it, and examined the Act and its legislative history for guidance. The Court concluded that Congress had entrusted the protection of the right created in Section 2, Fourth of the Act to the Board and had made no provision for judicial review. The fact that Congress expressly provided for judicial review of administrative determinations under the Act in two other instances led the Court to conclude that "it drew a plain line of distinction." That the difference in treatment was not inadvertent could be inferred from the history of the Act. Id. at 306, 64 S.Ct. at 99.
 
 
 25
 A case very similar to the present one is Aeronautical Radio, Inc. v. National Mediation Board, 380 F.2d 624 (D.C.Cir.), cert. denied, 389 U.S. 912, 88 S.Ct. 237, 19 L.Ed.2d 259 (1967). There 147 out of 400 eligible employees voted for the Teamsters as their representative. There were 74 votes for a second union and 179 employees either did not vote or cast void ballots. The Board certified the Teamsters and the employer sued to have the certification set aside. The ballot was in the same form as the one used in the present case. Answering arguments similar to those made by Zantop in this case the court noted that more than a majority of those eligible had voted for union representation, and of those so voting, a majority had selected the Teamsters. On this basis the Board was permitted to draw the conclusion that since a majority had voted for some representation, "the union which became the choice of a majority of those thus voting should be certified." Id. at 627.
 
 
 26
 We agree with the district court that neither the method by which the Board determined that a majority favored representation by the UAW nor the form of the ballot is subject to judicial review.
 
 
 27
 The method of determining a majority was within the broad discretion granted to the Board. The logic of the method chosen is easily discerned. In a case where several unions are competing to become the representative, to require one to receive a majority of all eligible votes would permit a minority to prevent any representation by abstaining or casting void ballots even though a majority of all eligible employees vote for some representation. Under the Board's method if a majority of the eligible voters want no representation they can achieve this by abstaining or casting void ballots. The instructions on the ballot advised the voters of this choice. There was no contravention of the statutory mandate in the method by which the Board determined that the UAW should be certified as the designated and authorized representative of Zantop's flight crew members.
 
 
 28
 It is obvious that the ballot would be improved by adding a notice that if a majority voted for some representation, the Board would certify the representative which received a majority of all votes so cast. However, we cannot say that the failure to include such a legend on the ballot establishes that the Board exceeded its authority under the Act by certifying the UAW. As the Supreme Court made clear in Railway Clerks, the "details of selecting representatives were to be left for the final determination of the Board." 380 U.S. at 669, 85 S.Ct. at 1202. The form of the ballot is such a detail.
 
 B.
 
 29
 Zantop also maintains that the Board's failure to explain its voting procedures unambiguously deprived the voters of a free choice in violation of the statutory duty to "investigate" representation disputes. This argument essentially voices the same complaint--that the Board failed to follow procedures which would accurately determine the will of the majority. However, it is couched in terms of failure to investigate because of several decisions which have based judicial review on the Board's violation of its duty to investigate.
 
 
 30
 We conclude, however, that the Board did not fail to investigate the dispute in the present case. The facts are quite different from those in two recent cases where judicial review was permitted. In International In-Flight Catering Co., Ltd. v. National Mediation Board, 555 F.2d 712 (9th Cir.1977), certification was based on authorization cards signed by a majority of employees in a given classification. No election was held. In challenging the certification the employer produced affidavits that the employees who signed the cards had been told the purpose of the cards was to obtain an election, not that the cards were a designation of a representative. In upholding the district court's jurisdiction over the employer's action for a declaratory judgment and injunction the court of appeals concluded that this was a case where limited judicial review was permitted to determine whether the Board had in fact investigated the dispute as required by Section 2, Ninth of the Act. The dispute in the case was over the purpose of the authorization cards. The Board merely compared the signatures on the cards with those on file with the employer, while assuming the disputed issue--that the cards represented votes. International In-Flight offers no support to Zantop's position.
 
 
 31
 In Russell v. National Mediation Board, 714 F.2d 1332 (5th Cir.1983), the court found jurisdiction to review the Board's dismissal of an application for investigation of a representation dispute. The Board's dismissal was based on its conclusion that the applicant did not intend to represent the craft or class of employees if selected by them and certified. This was the extent of the Board's investigation, and it did not conduct an election. The district court dismissed the applicant's suit for a declaratory judgment, injunction and mandamus for lack of jurisdiction. In reversing, the court of appeals concluded that the Board had breached its clear statutory duty by not conducting an investigation into the representation dispute to which the application was addressed. The court noted that judicial review is very limited, but that the case before it was one where Board action (or inaction), its failure to investigate, had deprived employees of a right given them by the Act.
 
 
 32
 As a rule, we are not to look over the Board's shoulder in representational disputes. These matters are, apart from exceptional cases, solely the Board's concern. As discussed in Switchmen's Union, Congress intended that the Board have the final word in such matters. But where Congress has created a right, the Board cannot destroy that right without intervention by the judiciary. To hold otherwise would rob the Act of its vitality and thwart its purpose.
 
 
 33
 Id. at 1340-41. The opinion in Russell contains a helpful outline of the development of the few recognized exceptions to the general rule that certifications by the Board are not subject to judicial review. Id. at 1337-40. We conclude that the present case does not come within any of the exceptions.
 
 
 34
 The judgment of the district court is affirmed.
 
 
 
 *
 The Honorable William O. Bertelsman, Judge, United States District Court for the Eastern District of Kentucky, sitting by designation
 
 
 [1]
 Section 2, Ninth provides:
 Ninth. If any dispute shall arise among a carrier's employees as to who are the representatives of such employees designated and authorized in accordance with the requirements of this chapter, it shall be the duty of the Mediation Board, upon request of either party to the dispute, to investigate such dispute and to certify to both parties, in writing, within thirty days after the receipt of the invocation of its services, the name or names of the individuals or organizations that have been designated and authorized to represent the employees involved in the dispute, and certify the same to the carrier. Upon receipt of such certification the carrier shall treat with the representative so certified as the representative of the craft or class for the purposes of this chapter. In such an investigation, the Mediation Board shall be authorized to take a secret ballot of the employees involved, or to utilize any other appropriate method of ascertaining the names of their duly designated and authorized representatives in such manner as shall insure the choice of representatives by the employees without interference, influence, or coercion exercised by the carrier. In the conduct of any election for the purposes herein indicated the Board shall designate who may participate in the election and establish the rules to govern the election, or may appoint a committee of three neutral persons who after hearing shall within ten days designate the employees who may participate in the election. The Board shall have access to and have power to make copies of the books and records of the carriers to obtain and utilize such information as may be deemed necessary by it to carry out the purposes and provisions of this paragraph.