**BRITISH AIRWAYS BOARD,**
**Plaintiff-Appellant,**

v.

**NATIONAL MEDIATION BOARD, et al., Defendants-Appellees.**

**No. 1404, Docket 82–6018.**

United States Court of Appeals,
Second Circuit.

Argued June 14, 1982.

Decided Aug. 4, 1982.

---

Murray Gartner, New York City (Edward A. Brill and Poletti, Freiden, Prashker, Feldman & Gartner, New York City, on the brief), for plaintiff-appellant.

Theodore M. Grossman, Dept. of Justice, Washington, D.C. (J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., Edward R. Korman, U.S. Atty., Brooklyn, N.Y., Anthony J. Steinmeyer, Dept. of Justice, Washington, D.C., on the brief), for defendant-appellee Nat. Mediation Bd.

Clinton J. Miller, III, Washington, D.C. (Highsaw & Mahoney, Washington, D.C., Sidney Fox, Gerald Richman, and Shapiro, Shiff, Beilly, Rosenberg & Fox, New York City, and Joseph P. Manners, Gen. Counsel, Intern. Ass'n of Machinists and Aerospace Workers, Washington, D.C., on the brief), for defendants-appellees Intern. Ass'n of Machinists and Aerospace Workers and IAM District Lodge No. 100.

Before NEWMAN and PIERCE, Circuit Judges, and KNAPP,* District Judge.

---

NEWMAN, Circuit Judge:

This is an appeal from a judgment entered on January 22, 1981 in the Eastern District of New York (Jacob Mishler, Judge), granting summary judgment to defendants National Mediation Board (NMB), International Association of Machinists and Aerospace Workers, and District Lodge No. 100, IAM (the Union) and dismissing the complaint of plaintiff British Airways Board. The complaint charged that the NMB violated various provisions of the Railway Labor Act, 45 U.S.C. §§ 151–188 (1976), in certifying the Union as the representative of a class of plaintiff's employees despite asserted irregularities in the election process. After considering the import of each of the charges raised by plaintiff, the District Court held that it lacked subject matter jurisdiction to review the actions of the NMB because none of the claims amounted to the unconstitutional acts or gross violations of the statute necessary to confer jurisdiction over NMB determinations in representation disputes. 533 F.Supp. 150 (E.D.N.Y.1982). We affirm.

In February 1978, defendant Union filed an application with the NMB to investigate a representation dispute among certain of plaintiff's employees. Acting pursuant to its powers under section 2, Ninth of the Act, 45 U.S.C. § 152, Ninth, the NMB conducted an investigation, including hearings, and determined that a representation dispute existed among one designated class of plaintiff's employees. The NMB authorized an election, with balloting by mail only, to be conducted in October and November of 1980; it also set May 14, 1978 as the eligibility cutoff date for the election: workers hired after that date were not eligible to vote. This date was the last payroll date after the NMB began its investigation of the dispute, and its selection as the cutoff date was in accordance with frequent but apparently not unvarying NMB practice. As a result of the election, defendant Union was certified as the employees' representa-

tive. Plaintiff then sued to set aside the certification, seeking review of several determinations made by the NMB in the course of conducting the election. On appeal, plaintiff renews two of those challenges: the selection of the May 14, 1978 cutoff date, and the decision to count a number of ballots that had been mailed before the end of the balloting period but were not received by NMB until afterwards because they had been mislaid at the Post Office. Defendants, in addition to supporting the District Court's decision that the NMB's determinations were unreviewable, attack plaintiff's standing to challenge both the eligibility of the voters and the legitimacy of the ballots cast in an NMB election.

■ 1. The District Court adverted to the "serious question" of plaintiff's standing to challenge an NMB certification, but proceeded without deciding that question because of the intervention of certain employees, who unquestionably had standing to sue. 533 F.Supp. at 153. Since those employees do not join in this appeal, we encounter the standing issue.

If this dispute had arisen under § 9 of the National Labor Relations Act (NLRA), 29 U.S.C. § 159 (1976), there would be no question that the employer could not initiate a suit in the district court to challenge the Board's certification of a collective bargaining representative of the employees. *Boire v. Greyhound Corp.*, 376 U.S. 473, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964). Normally, an employer's only recourse is to await a complaint by the NLRB charging a violation of the employer's duty to bargain, NLRA § 8(a)(5), 29 U.S.C. § 158(a)(5), and assert its objection to the Board's certification in the unfair labor practice proceeding before the Board and thereafter before a court of appeals in the event the Board issues a bargaining order and seeks its enforcement. *See, e.g., ITT Lighting Fixtures v. NLRB*, 658 F.2d 934 (2d Cir. 1981). With rare exceptions, *McCulloch v. Socie-*

*dad Nacional de Marineros de Honduras*, 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963); *cf. Leedom v. Kyne*, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958) (district court suit brought by union), this procedure has been followed to promote "the basic national policy of preventing industrial strife and achieving industrial peace by promoting collective bargaining," *id.* at 191, 79 S.Ct. at 185 (Brennan, J., dissenting). *See Boire v. Greyhound Corp., supra; see also American Federation of Labor v. NLRB*, 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347 (1940).

The NMB makes the forceful argument that the same arrangement should prevail under the Railway Labor Act, with a carrier precluded from initiating a district court challenge to certification by the NMB under Article 2, Ninth, and obliged to wait until the certified union sued to enforce the carrier's obligation to "treat with" the employees' representative and then assert whatever limited defenses may be available, *see Switchmen's Union v. National Mediation Board*, 320 U.S. 297, 307, 64 S.Ct. 95, 100, 88 L.Ed. 61 (1943); *Virginian Railway v. System Federation No. 40*, 300 U.S. 515, 562, 57 S.Ct. 592, 606, 81 L.Ed. 789 (1937). The carrier contends that the procedures of the NLRA and the RLA vary in important respects, and that the differences warrant different opportunities for litigation. Noting that the NMB has no authority comparable to that of the NLRB to bring an unfair labor practice charge when an employer breaches a duty to bargain, British Airways argues that it is entitled to initiate this suit in the District Court to challenge the NMB's certification, and, if unsuccessful, thereafter may also resist the Union's equitable action in the District Court to enforce the carrier's duty to "treat with" the Union.[1]

It is not entirely clear whether the issue dividing the parties concerns a carrier's standing to litigate or the reviewability of

---

1. Of course, if, as we hold, the carrier is entitled to at least a limited review at this point as to whether the NMB has discharged its duty to investigate, then in any subsequent equitable action by the union to enforce the duty to "treat with" it, issues concerning the lawfulness of the certification will be foreclosed.

NMB orders in advance of a union's suit to enforce the carrier's obligations under the Act.[2] However framed, we think the issue has been implicitly resolved in favor of the carrier's right to litigate by the Supreme Court's decision in *Brotherhood of Railway & Steamship Clerks v. Association for the Benefit of Non-Contract Employees*, 380 U.S. 650, 85 S.Ct. 1192, 14 L.Ed.2d 133 (1965) *("Railway Clerks"), aff'g in part and rev'g in part United Air Lines v. National Mediation Board*, 330 F.2d 853 (D.C.Cir. 1964). In *Railway Clerks* the Court entertained on the merits claims of both a union and a carrier, United Air Lines, that the NMB was unlawfully determining an employees' representative by proposing to conduct an election with a ballot that did not permit an explicit vote against collective representation. In the District Court, United's suit challenging the form of ballot had been dismissed on grounds assumed by the Court of Appeals to have been lack of standing. *See* 330 F.2d at 854. The union's suit was entertained in the District Court and resulted in an injunction against use of the ballot. After affirmance of both the injunction and the dismissal of United's suit by the Court of Appeals, *id.*, petitions for certiorari were filed in the Supreme Court. United's petition specifically included the following as one of the questions presented: "Does a carrier have judicial standing to complain of the ballot form?" Pet. for Cert., No. 139, Oct. Term 1964, question 2(b). The Supreme Court granted the petition without limitation and adjudicated the merits of United's claim, at least to the extent of holding that the ballot form was within the permissible range of discretion Congress had delegated to the NMB. Thus, in contrast to its holding that United was not entitled to participate as a party in the proceedings before the NMB, the Court was willing to consider the merits of United's claim that the result of those proceedings would be to require it to bargain with an improperly certified representative. We agree with the Ninth Circuit that *Railway Clerks* is an implicit holding that a carrier has standing to challenge NMB decisions concerning the certification of the representative of its employees. *International In-Flight Catering Co. v. National Mediation Board*, 555 F.2d 712, 719 (9th Cir. 1977). We therefore reach the issue on the merits, which in cases of this sort pose an issue of district court jurisdiction.

■ 2. In *Switchmen's Union v. National Mediation Board, supra*, the Supreme Court stated that the purposes of the Railway Labor Act precluded judicial review of NMB actions: "[T]he intent seems plain— the dispute was to reach its last terminal point when the administrative finding was made. There was to be no dragging out of the controversy into other tribunals of law." 320 U.S. at 305, 64 S.Ct. at 99. The general rule derived from this case has come to be that " '[r]epresentation disputes,' which involve controversies surrounding the designation and authorization of representatives of employees covered under the RLA, are committed to the exclusive jurisdiction of the NMB." *Air Line Pilots Association v. Texas International Airlines*, 656 F.2d 16, 20 n.6 (2d Cir. 1981). As the District Court recognized, however, this general principle does not completely displace the courts from any role in NMB matters; it simply means that our role is quite limited. The scope of judicial review and intervention is confined to "instances of constitutional dimension or gross violation of the statute." *International Brotherhood of Teamsters v. Brotherhood of Railway, Airline & Steamship Clerks*, 402 F.2d 196, 205 (D.C.Cir.), *cert. denied*, 393 U.S. 848, 89 S.Ct. 135, 21 L.Ed.2d 119 (1968). *Accord, Railway Clerks, supra*, 380 U.S. at 659–60, 661, 85 S.Ct. at 1197, 1198; *Sedalia-Marshall-Boonville Stage Line, Inc. v. National Mediation Board*, 574 F.2d 394, 397–99 (8th Cir.), *cert. denied*, 439 U.S. 881, 99 S.Ct. 218, 58

**2.** If any available challenge to the NMB's certification were deferred to the union's suit to compel the carrier to "treat with" it, there would arise the further issue "whether relief for failure of the Board to make a proper investigation could ever be granted in an action to which the Board is not a party." *Ruby v. American Airlines, Inc.*, 323 F.2d 248, 255 (2d Cir. 1963), *cert. denied*, 376 U.S. 913, 84 S.Ct. 658, 11 L.Ed.2d 611 (1964).

L.Ed.2d 193 (1978); *International In-Flight Catering Co. v. National Mediation Board, supra,* 555 F.2d at 717–18.

Inspection of the statute reveals that there are relatively few commands capable of being violated. Section 2, Ninth of the Act places a duty on the NMB to investigate representation disputes upon application of a party; all details and procedures, however, are left to the NMB's discretion. It is authorized to conduct an election if it sees fit, either by secret ballot or by "any other appropriate method." If it does conduct an election, it is obliged to "designate who may participate in the election and establish the rules to govern the election," but how it accomplishes this mission is entirely its affair, as long as it makes certain that the carrier does not interfere. *See Railway Clerks, supra,* 380 U.S. at 668–69, 85 S.Ct. at 1201–02. Not surprisingly, given the evident breadth of this discretion and the reluctance of courts to intervene in RLA cases, judicial inquiry has focused on whether the NMB obeyed the principal statutory command to investigate disputes; as the Ninth Circuit has said, "[R]eviewing a certification after an investigation by the NMB and reviewing whether the NMB made its statutory investigation at all are two completely different matters. While we cannot, and do not, review the former, we can and do review the latter." *International In-Flight Catering Co. v. National Mediation Board, supra,* 555 F.2d at 717. Alternatively, the same limited judicial role results if courts consider all challenges to the NMB's exercise of its certifying authority as allegations of breach of the statutory duty to investigate, and find meritorious only those involving an investigation so inadequate as to be a non-performance of the duty.

In this case, British Airways alleged in the District Court both a breach of the NMB's duty to investigate and, as separate illegalities, the setting of the cutoff date and the counting of ballots. On appeal, only the latter two claims are pursued. Neither constitutes action in excess of delegated powers or contrary to specific statutory directions. The NMB decided to con-

duct an election and to do so by secret ballot. It then designated who could participate, as it is required to do, and specified those workers in plaintiff's employ as of May 14, 1978. It also set rules for the election, again as required. Selecting a cutoff date, even though as events unfolded it was not possible to conduct the election until more than two years after the date, and counting ballots that reasonably appeared from postmarks to have arrived at the post office before the deadline were decisions well within its discretion. This is not a case of abuse of power or defiance of statutory mandate. The District Court correctly ruled that it was without jurisdiction to review the NMB's certification. *Cf. Railway Clerks, supra,* 380 U.S. at 659–61, 85 S.Ct. at 1197–98; *Leedom v. Kyne, supra.*

The judgment of the District Court is affirmed.