CONTINENTAL AIRLINES, INC., and
Continental/Air Micronesia,
Plaintiffs,

v.

NATIONAL MEDIATION
BOARD, Defendant.

Civ. A. No. 91–796 (CRR).

United States District Court,
District of Columbia.

June. 11, 1991.

John J. Gallagher, P.C., Patricia A. Casey, and Deborah G. Pitcher of Akin, Gump, Strauss, Hauer & Feld, Washington, D.C., Daniel P. Casey, Associate Gen. Counsel, Continental Airlines, Inc., Houston, Tex., and R. Tenney Johnson, Washington, D.C., for plaintiffs.

Stuart M. Gerson, Asst. Atty. Gen., Jay B. Stephens, U.S. Atty., D.D.C., Theodore C. Hirt and David J.F. Gross, U.S. Dept. of Justice, Washington, D.C.; Ronald M. Etters, Gen. Counsel, Nat. Mediation Bd., of counsel, for defendant.

CHARLES R. RICHEY, District Judge.

Before the Court are cross-motions for summary judgment.[1] The plaintiffs, two air carriers, challenge the validity of a decision by the National Mediation Board ("NMB" or "Board") to transfer the certifications from an employee union to its successor after the merger of the two unions. The NMB argues that the Court lacks jurisdiction to grant the plaintiffs relief. After careful consideration of the parties' memoranda, the arguments of counsel, the underlying law, and the entire record herein, the Court shall grant summary judgment for the NMB and dismiss this case.

## I. *Background*

There is no genuine dispute as to the material facts. On September 13, 1989, the Union of Flight Attendants ("UFA") and the International Association of Machinists & Aerospace Workers ("IAM & AW") requested that the NMB transfer certifications issued to UFA in NMB Case Nos. R–5352 and R–5337 to the IAM & AW after the merger of the two organizations. The NMB then investigated the circumstances of the IAM/UFA merger for one year.[2] The Board considered hundreds of pages of evidence and also reviewed submissions by the plaintiffs attacking the validity of the union merger.

The Board concluded from its investigation that UFA had merged into the IAM in 1984; the UFA flight attendants had supported the merger in an internal ratification election by a vote of 1,077 to 161; the ratification vote was free of procedural irregularities; despite the five-year delay, the unions had timely filed a transfer request; and a transfer of certifications from UFA to IAM was appropriate. *See In Re: Rep. of Empl. of Continental Airlines and Air Micronesia—Flight Attendants,* 18 N.M.B. 40 (1990).

The plaintiffs filed the instant suit challenging the Board's decision on the ground that the Board failed to investigate properly the unions' request for a transfer of certifications. The plaintiffs argue that NMB violated the Railway Labor Act and the Constitution by basing its transfer decision on a union merger ratification vote which occurred in 1984 and which was based on a plurality vote.

## II. *Analysis*

### A. *The Standard for Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure requires that the Court grant a motion for summary judgment if the pleadings and supporting affidavits and other submissions "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." It is well established that the Court must believe the nonmovants' evidence and draw all justifiable inferences in their favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). However, "[t]he mere existence of a scintilla of evidence in support of the [nonmovants'] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovants]." *Id.* at 252, 106 S.Ct. at 2512.

### B. *The Scope of Judicial Review*

Under the Railway Labor Act ("RLA"), judicial review of a Board decision is "one of the narrowest known to the law." *Internat'l Ass'n of Machinists v. TWA,* 839 F.2d 809, 811 (D.C.Cir.1988), *amended* 848 F.2d 232, (D.C.Cir.1988) *cert. denied,* 488 U.S. 820, 109 S.Ct. 62, 102 L.Ed.2d 40 (1988). A reviewing court only takes a "peek at the merits" to determine

---

1. On May 18, 1991, the defendant filed a Motion to Dismiss or for Summary Judgment. Because the defendant's motion refers to matters outside the pleadings, the Court shall treat the motion as one for summary judgment under Rule 56. *See* Fed.R.Civ.P. 12(c).

2. It is the practice of the Board not to use its election procedures in transfer request investigations. In most cases, the Board grants a transfer request based on assertions contained in the request letters. *See, e.g., Transtar Pilots Ass'n,* 14 N.M.B. 377 (1987); *City of Prinevill Ry. Empl. Union,* 13 N.M.B. 398 (1986); *Bhd. of Ry. Airline & S.S. Clerks,* 13 N.M.B. 408 (1986); *United Transportation Union,* 13 N.M.B. 6 (1985); *United Transportation Union,* 11 N.M.B. 228 (1984).

whether it is "obvious on the face of the papers" that the Board totally failed to undertake an investigation of a representation dispute. *Teamsters v. Bhd. of Ry. Clerks*, 402 F.2d 196, 205 (D.C.Cir.), *cert. denied*, 393 U.S. 848, 89 S.Ct. 135, 21 L.Ed.2d 119 (1968); *see Brotherhood of Ry. & S.S. Clerks v. Ass'n for the Benefit of Non–Contract Employees*, 380 U.S. 650, 661, 85 S.Ct. 1192, 1198, 14 L.Ed.2d 133 (1965). The Court "is empowered to proceed no further" unless the "peek" reveals such an obvious error. *Prof. Cabin Crew Ass'n v. NMB*, 872 F.2d 456, 463 (D.C.Cir. 1989), *cert. denied*, 493 U.S. 974, 110 S.Ct. 497, 107 L.Ed.2d 500 (1989).

■ The Court may review Board decisions which violate its "clear and mandatory" statutory duties, *Leedom v. Kyne*, 358 U.S. 184, 188, 79 S.Ct. 180, 184, 3 L.Ed.2d 210 (1958), but only if the violation is obvious without the need for "arguing in terms of policy and broad generalities as to what the Railway Labor Act should provide." *Brotherhood of Ry. & S.S. Clerks*, 380 U.S. at 671, 85 S.Ct. at 1203; *see Prof. Cabin Crew*, 872 F.2d at 459; *Teamsters v. NMB*, 136 L.R.R.M. 2193, 2194, 1990 WL 264 708 (D.D.C.1990).

The central issue in this case is whether the NMB failed to carry out its statutory duty to investigate the representation dispute. *See Brotherhood of Ry. & S.S. Clerks*, 380 U.S. at 661, 85 S.Ct. at 1198 ("the Board's action here is reviewable only to the extent that it bears on the question of whether it performed its statutory duty to 'investigate' the dispute"). The focus of the inquiry is whether the Board investigated the dispute, not how it conducted its investigation:

> [R]eviewing a certification after an investigation by the NMB and reviewing whether the NMB made its statutory investigation at all are two completely different matters. While we cannot, and do not review the former, we can and do review the latter.

*In–Flight Catering v. NMB*, 555 F.2d 712, 717 (9th Cir.1977). Here, the plaintiffs fail to meet their heavy burden of proving that the Board committed an error of "constitu-

tional dimension or gross violation of the [RLA]." *Internat'l Brotherhood of Teamsters v. Brotherhood of Ry., Airline & S.S. Clerks*, 402 F.2d 196, 205 (D.C.Cir.), *cert. denied sub nom., Brotherhood of Ry., Airline & S.S. Clerks v. NMB*, 393 U.S. 848, 89 S.Ct. 135, 21 L.Ed.2d 119 (1968).

### C. *Plaintiffs' Contentions*

At bottom, the plaintiffs advance three major arguments that the NMB's investigation violated the RLA. The plaintiffs complain the Board based its transfer decision on (1) a union's ratification vote (2) that occurred in 1984 and (3) in which a plurality of flight attendants supported the merger. Moreover, the plaintiffs argue that NMB violated the Constitution. However, the plaintiffs fail to demonstrate that the NMB violated a clear and mandatory duty, and therefore judicial review is unavailable. *See Teamsters*, 136 L.R.R.M. at 2194.

### 1. *NMB Did Not Violate the RLA By Basing Its Transfer Order on the Union Merger Ratification Vote*

■ The plaintiffs argue that RLA § 2, Ninth prohibits the Board from granting the request for transfer of certifications on the basis of the unions' merger ratification vote. This argument must fail. Section 2, Ninth provides in that conducting an *election*, the Board:

> shall designate who may participate in the election and establish the rules to govern the election, or may appoint a committee of three neutral persons who after a hearing shall within 10 days designate the employees who may participate in the election.

While this language requires the Board to take certain steps when and if it decides to conduct an election, the RLA does not prohibit the Board from investigating the circumstances of a union merger ratification vote and granting a transfer of certifications based on that vote if the circumstances warrant. Section 2, Ninth imposes no "clear and mandatory" obligation on the NMB to refrain from investigating the circumstances of a union merger vote and to abstain from granting a transfer of certifi-

cations based on that vote. *Cf. Teamsters,* 136 L.R.R.M. at 2194 (rejecting the analogous argument that the RLA imposed a clear and mandatory duty on the Board to refrain from investigating in the wake of a carrier request).[3]

## 2. NMB Did Not Violate the RLA By Basing Its Transfer Order on Five–Year–Old Data

■ The plaintiffs allege that NMB violated the RLA by basing its transfer decision on the UFA's ratification vote, which had occurred five years before the Board's investigation.[4] However, the plaintiffs fail to demonstrate that the Board violated any clear and mandatory provision of the RLA by using the five-year-old data. The resolution of the issues concerning the timeliness of the data was within the Board's discretion, and did not rise to a "gross violation of the statute." For example, in *British Airways Bd. v. NMB,* 685 F.2d 52 (2d Cir.1982), the Court of Appeals held that "[s]electing a cutoff date, even though as events unfolded it was not possible to conduct the election until more than two years after the date, and counting ballots that reasonably appeared from postmarks to have arrived at the post office before the deadline were decisions well within [NMB's] discretion," and therefore the District Court had no jurisdiction to review NMB's certification in the election case. *Id.* at 55. *See also USAir v. NMB,* 711 F.Supp. 285 (E.D.Va.), *aff'd,* 894 F.2d 603 (4th Cir.1989) (NMB's refusal to adjust voter eligibility cut-off dates for representation election to accommodate 197 employees not subject to judicial review). The Board was within its discretion in examining the circumstances surrounding the

unions' delay in filing a petition and considering that petition "timely filed."

## 3. The RLA Did Not Prohibit the NMB from Basing its Transfer Order on a Plurality Vote

■ The plaintiffs also contend that NMB violated the RLA because the union merger ratification on which the NMB relied was based on a plurality vote and did not reflect the wishes of the majority of the employees. NMB found that 1,077 to 161 of the votes cast in the union merger ratification election favored the merger.

However, the plaintiffs argue that only 41% of those employees receiving ballots, and only 37% of those eligible to vote, voted in the election for merger ratification. Yet the plaintiffs fail to show that the Board abused its discretion and breached a clear and mandatory duty in determining that the vote reflected that the flight attendants supported the IAM/UFA merger. *Cf. Radio Officers' Union v. NMB,* 181 F.2d 801 (D.C.Cir.1950) (relying on Attorney General opinion stating NMB has "the power to certify a representative which receives a majority of the votes cast despite the fact that less than a majority of those eligible voted"). Although almost 87% of the 1,245 employees who voted supported the merger, the plaintiffs argue that the Board should have counted nonvoters as effectively voting against the merger. The plaintiffs conclude that NMB should have determined that the majority of employees were against the merger.

The plaintiffs fail to show that their logic is supported by the RLA. The RLA did not require an NMB-sponsored election in this

---

**3.** In addition to joining the arguments raised by Continental, plaintiff Continental/Air Micronesia alleges that the NMB failed to investigate in any way the choice of its flight attendants as a separate unit from the Continental flight attendants. Citing several election request cases, Continental/Air Micronesia concludes that the Board failed to perform its statutory duty to investigate the free choice of a majority of its flight attendants. However, the record shows that the NMB did conduct an investigation, and its decision regarding how to ascertain the level of participation of employees in a union ratification vote is within its discretion in a trans-

fer request case. Continental fails to demonstrate that the Board violated a clear and mandatory provision of the RLA, and therefore judicial review is unavailable. *See Teamsters,* 136 L.R.R.M. at 2194–95 (and cases cited therein).

**4.** Though noting that the transfer request deserved "closer scrutiny" because of the lapse of time, the Board determined that the unions had "acted reasonably under the circumstances" because a no-raiding provision in the AFL–CIO constitution had barred an earlier filing. *In Re: Representation of Employees,* 18 N.M.B. at 53.

transfer request case, and no statutory language prescribes how the NMB should assess the views of nonvoters in union elections.[5] The method used by NMB to determine that the employees supported the union merger and the form of the ballot used by IAM in this case are not subject to judicial review. *Cf., Zantop Internat'l Airlines, Inc. v. NMB*, 732 F.2d 517, 522 (6th Cir.1984) (election case holding that "neither the method by which the Board determined that a majority favored representation ... nor the form of the ballot is subject to judicial review").

In sum, while NMB's procedures were not what the plaintiffs may have hoped for, its investigation was not "so inadequate to be a non-performance of its statutory duties" under the RLA. *See British Airways Bd.*, 685 F.2d at 55.

### 4. *NMB Did Not Violate the Constitution*

In addition to alleging statutory violations, the plaintiffs argue that the Board violated the Free Speech Clause of the First Amendment and the Due Process Clause of the Fifth Amendment because its decision has "no basis in fact and law." The plaintiffs fail to show that the actions of the Board impinged on any rights protected by the Constitution, and their arguments are frivolous. *See Prof. Cabin Crew*, 872 F.2d at 463, n. 4 ("We have carefully considered appellant's contention that the inclusion of the former strikers violated the current workers' First Amendment and due process rights. We find the argument totally without merit, and need spend no time refuting it."), *cert. denied*, 493 U.S. 974, 110 S.Ct. 497, 107 L.Ed.2d 500 (1989) (citing *Internat'l Ass'n of Machinists*, 839 F.2d at 812).

### III. *Conclusion*

For all of the foregoing reasons, the Court shall grant the defendant's Motion to Dismiss or for Summary Judgment and shall dismiss this case from the dockets of the Court. None of the alleged violations advanced by the plaintiffs rise to a "constitutional dimension or gross violation of the [RLA]," *Internat'l Brotherhood of Teamsters*, 402 F.2d at 205, and therefore the Court lacks the power to grant the plaintiffs relief. The Court shall issue an Order of even date herewith in accordance with this Opinion.

### ORDER

In accordance with the Court's opinion of even date herewith, it is, by the Court, this 10th day of June, 1991,

ORDERED that the Motion for Summary Judgment by plaintiff Continental Airlines shall be, and hereby is, denied; and it is

FURTHER ORDERED that the Motion for Summary Judgment by plaintiff Continental/Air Micronesia shall be, and hereby is, denied; and it is

FURTHER ORDERED that the defendant's Motion to Dismiss or for Summary Judgment shall be, and hereby is, granted; and it is

FURTHER ORDERED that the above-captioned case shall be, and hereby is, dismissed from the dockets of the Court.

---

**5.** Even in election cases, the NMB has discretion to treat a nonvoter as either (1) acquiescing in the will of the majority or (2) voting for no representation. *Compare Virginian Ry. v. System Federation*, 300 U.S. 515, 560, 57 S.Ct. 592, 605–06, 81 L.Ed. 789 (1937) (upholding NMB certification because nonvoters "are presumed to assent to the expressed will of the majority of those voting") *with Ry. Clerks*, 380 U.S. at 670,

85 S.Ct. at 1203 (upholding practice in NMB-sponsored elections that "if the employee refuses to vote, he is treated as having voted for no representation").

The Board's practice in election request investigations to inform eligible voters that abstention from voting is a vote for no representation does not apply to a union merger ratification vote.