956 F.2d 1245
 139 L.R.R.M. (BNA) 2541, 60 USLW 2619,
121 Lab.Cas. P 10,011,
22 Fed.R.Serv.3d 417
 VIRGIN ATLANTIC AIRWAYS, LTD., Mario Batista, Lawrence
French, Julio Rosa, Jose Marcello Garcia, John
Aquino, and Edgar Lambertus,
Plaintiffs-Appellees, Cross-Appellants,
v.
NATIONAL MEDIATION BOARD, an agency of the United States of
America, International Brotherhood of Teamsters, Local 851,
Anthony Farina, individually and as president of Local 851,
International Brotherhood of Teamsters Airline Division,
William Genoese, individually and as Director of
International Brotherhood of Teamsters Airline Division,
Defendants-Appellants, Cross-Appellees.
 Nos. 687, 688, Dockets 91-6211, 91-6223, 91-6225 and 91-6253.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 16, 1991.
Decided Feb. 20, 1992.
 
 Frank A. Rosenfeld, Dept. of Justice, Washington, D.C. (Stuart M. Gerson, Asst. Atty. Gen., William Kanter, Dept. of Justice, Washington, D.C., Andrew J. Maloney, U.S. Atty., E.D.N.Y., Brooklyn, N.Y., Ronald M. Etters, General Counsel, Nat. Mediation Bd., Washington, D.C., of counsel), for appellant Natl. Mediation Bd.
 James A. McCall, Washington, D.C. (James T. Grady, General Counsel, Intern. Broth. of Teamsters, Washington, D.C., Jeffrey P. Englander, Morrison, Cohen, Singer & Weinstein, New York City, of counsel), for appellant Intern. Broth. of Teamsters.
 Michael Delikat, New York City (Jill L. Rosenberg, Orrick, Herrington & Sutcliffe, of counsel), for appellees.
 Before MESKILL, KEARSE and WINTER, Circuit Judges.
 MESKILL, Circuit Judge:
 
 
 1
 These appeals and cross-appeals involve the validity of a review by the United States District Court for the Eastern District of New York, Glasser, J., of the certification of an employee representative under the Railway Labor Act (RLA), 45 U.S.C. § 151 et seq. The National Mediation Board (NMB) is empowered by section 2, Ninth of the RLA, 45 U.S.C. § 152, Ninth, to investigate and resolve disputes among employees of a carrier by rail or air as to the identity of their bargaining representative, 132 F.R.D. 342. Once the carrier receives certification from the NMB that a particular individual or organization is the duly authorized representative of a group of employees, the carrier is obligated to bargain with that representative.
 
 
 2
 The district court erred in determining that it had jurisdiction to review the union certification and incorrectly held that the certification was invalid. The court wrongly dismissed many of the counterclaims brought by the union against the carrier. The district court, however, correctly dismissed the union's counterclaim concerning the status quo provisions of the RLA because there was no pre-existing bargaining relationship between the parties. Finally, we hold that the district court did not abuse its discretion in finding that the NMB violated Fed.R.Civ.P. 11 by filing a repetitive motion.
 
 BACKGROUND
 
 3
 On February 17, 1988 the International Brotherhood of Teamsters, Local 851 (hereinafter, along with appellant International Brotherhood of Teamsters Airline Division, "Union") filed an application with the NMB to investigate a dispute among certain employees of Virgin Atlantic Airways, Ltd. (Virgin). There had been talk of unionization among this group of workers for several months prior to this application.
 
 
 4
 Shortly after filing the application, the Union, along with several discharged Virgin employees, brought an action in federal court (the Hodges action) alleging that Virgin had unlawfully interfered with the right of the employees to select their own bargaining representative. The complaint alleged, among other things, that six employees had been discharged because they were vocal supporters of the Union. The discharged employees sought reinstatement. Two of the six were eventually rehired by Virgin, but the remaining four did not work at Virgin after February 6, 1988.
 
 
 5
 The NMB proceeded to investigate the representation dispute among the Virgin employees. In March 1988 an NMB representative held a conference with Virgin and the Union. Virgin requested that the four plaintiffs in the Hodges action not be included among those employees eligible to vote in any election held to determine representation. Under an NMB rule, discharged employees with pending reinstatement actions are eligible to vote. See 29 C.F.R. § 1206.6 (1991). Virgin recognized this rule, but argued that the four should not be allowed to vote because the Hodges action was merely an attempt to take advantage of that rule rather than a bona fide reinstatement action. Virgin requested that the NMB stay its processing of the application until the district court ruled on the reinstatement claim.
 
 
 6
 By the end of March, the NMB representative had authorized an election among the employees and had included the four Hodges plaintiffs among those employees eligible to vote. The election was scheduled for April 25, 1988. The NMB representative explicitly informed the parties that they could appeal any decision of the representative to the NMB. Virgin did not appeal the decision to include the Hodges plaintiffs within the specified time.
 
 
 7
 On April 19, 1988 Virgin sent a telex to the NMB with two requests. First, Virgin noted that the trial in the Hodges case had been scheduled for the same date as the election and requested that the count be moved to the following day as Virgin wished its attorneys to be present at the vote count. Second, because the district court was expected to rule on the reinstatement claims promptly, Virgin requested that the challenged ballots be sequestered and that, if those ballots proved determinative, the NMB postpone the count until the determination of the district court.
 
 
 8
 The NMB responded the next day with a telex to Virgin that stated: "Due to eligibility questions raised by telex of April 19, 1988 ... the count of ballots ... is postponed. Ballots received by the board ... will be impounded at 2:00 p.m. on Monday, April 25, 1988 and counted at a later date after all questions of eligibility have been determined."
 
 
 9
 On April 26, 1988 the NMB again communicated with Virgin and reversed its earlier position. It informed Virgin that the votes would be counted on April 27 and that all ballots from those eligible to vote as of the original April 25 count date would be included. Citing similar determinations in other cases, the NMB denied Virgin's request for a delay in the count.
 
 
 10
 On April 27, 1988 the district court in the Hodges action held that the four employees had not been discharged because of their union activity and thus were not entitled to reinstatement. Virgin informed the NMB of this decision immediately and again requested that the votes of the four employees not be counted.
 
 
 11
 The NMB again denied this request and counted all the ballots. The Union received twelve of a possible twenty-one votes, including the four challenged votes. Thus, a majority of the eligible voters designated the Union as their representative. Had the four challenged ballots been excluded, the Union would not have had majority support. On May 2, 1988 the NMB certified the Union as the bargaining representative of the employees.
 
 
 12
 Despite the certification by the NMB, Virgin refused to bargain with the Union. Instead, Virgin solicited its employees to sign a prepared statement that read: "I have rethought my position regarding Virgin Atlantic and the Union and would like to collectively work with Management for one year after which time I would like the option of considering a Union to represent me."
 
 
 13
 After repeated overtures to Virgin to negotiate, the Union called a strike on July 6, 1988. Virgin again refused to negotiate with the Union at a mediation session on August 8, 1988 called at the direction of the NMB. The striking workers, led by the Union, then engaged in secondary picketing directed against United Air Lines, a company that did business with Virgin. See United Air Lines v. Airline Div., etc., 874 F.2d 110 (2d Cir.1989).
 
 
 14
 On October 11, 1988 Virgin and six of its fleet service employees filed this action in the United States District Court for the Eastern District of New York against the NMB, the Union and others. They sought to set aside the certification, claiming that the NMB had grossly violated the RLA, had violated the First and Fifth Amendments to the Constitution and had violated the Administrative Procedure Act. Virgin also sought to enjoin picketing by the Union.
 
 
 15
 The Union filed a counterclaim against Virgin, seeking enforcement of the NMB certification and alleging that Virgin had violated the RLA by unilaterally altering the terms and conditions of employment. The Union also alleged that Virgin had impermissibly interfered with the employees' choice of a bargaining representative through the solicitation of signatures for the prepared statement.
 
 
 16
 The NMB moved to dismiss the complaint. The NMB argued that its actions in certifying a bargaining representative were not subject to judicial review except where the NMB had "grossly violated" the terms of the RLA. The NMB argued that no such violation had occurred and therefore the district court could not review the certification. On February 24, 1989, after briefing and oral argument, the district court denied the NMB's motion to dismiss. The district court recognized the limited judicial review available for NMB certifications. However, the court held that, because the NMB counted the votes of individuals who were not "employees" for purposes of the RLA, there was jurisdiction to review the certification "[u]pon the precise facts of this case."
 
 
 17
 The parties agreed that the litigation should be stayed pending an interlocutory appeal of the denial of the motion to dismiss to this Court. After a delay, the district court entered an order pursuant to 28 U.S.C. § 1292(b) for an interlocutory appeal in February 1990. On March 15, 1990 we, in our discretion, declined to permit the interlocutory appeal to be taken and returned the matter to the district court.
 
 
 18
 On June 6, 1990 the NMB filed a motion styled as a "Resubmitted Motion to Dismiss, or in the Alternative, for Summary Judgment." That motion fundamentally relied on the same reasons the NMB had offered in its first motion to dismiss. After a hearing, the district court denied the motion on the basis of a local rule requiring that motions for reargument be made within ten days of the original decision and the law of the case doctrine. The district court imposed sanctions on the NMB under Rule 11 for filing what was essentially the same motion that the court had denied over a year earlier.
 
 
 19
 Virgin then moved for summary judgment and, after a hearing, the district court granted the motion in June 1991. The district court held that the NMB had "grossly violated" the RLA by counting the votes of the four challenged individuals. Therefore the district court held that the certification of the Union was invalid. The district court dismissed the Union's counterclaims and granted summary judgment to the NMB on Virgin's remaining claim that the certification violated the First and Fifth Amendments and the Administrative Procedure Act. Virgin, the Union and the NMB now appeal from the various determinations of the district court.
 
 DISCUSSION
 1. The Certification
 
 20
 The district court invalidated the certification on a motion for summary judgment pursuant to Fed.R.Civ.P. 56(c). That rule provides that a court should enter judgment when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In this case, the parties do not contend that any of the material facts are in dispute. The parties, however, disagree as to which of them is "entitled to a judgment as a matter of law."
 
 
 21
 The RLA provides that when there is a dispute between employees as to the identity of their representative the NMB should investigate and certify the identity of that representative. 45 U.S.C. § 152, Ninth. The jurisdiction of a federal court to review the certification of a bargaining representative by the NMB under the RLA has been held to be extremely limited. "The scope of judicial review and intervention is confined to 'instances of constitutional dimension or gross violation of the statute.' " British Airways Board v. National Mediation Board, 685 F.2d 52, 55 (2d Cir.1982) (citations omitted).
 
 
 22
 Virgin contends, however, that the NMB's actions are susceptible to more exacting judicial review under the Administrative Procedure Act (APA), 5 U.S.C. § 551 et seq. The district court correctly rejected this contention. By its terms, the judicial review provision of the APA does not apply if "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). As we have stated before, " '[r]epresentation disputes,' which involve controversies surrounding the designation and authorization of representatives of employees covered under the RLA, are committed to the exclusive jurisdiction of the NMB." Air Line Pilots Ass'n v. Texas Int'l Airlines, 656 F.2d 16, 20 n. 6 (2d Cir.1981) (citations omitted). See also Railway Clerks v. Employees Ass'n, 380 U.S. 650, 658-60, 85 S.Ct. 1192, 1196-98, 14 L.Ed.2d 133 (1965); Switchmen's Union v. National Mediation Board, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61 (1943). Therefore, review of the certification is not available under the APA.
 
 
 23
 Thus, the certification here properly could be set aside only if the NMB grossly violated the RLA or violated some constitutional principle. The district court found that it had jurisdiction to review this certification because the NMB had grossly violated the terms of the statute. Virgin argues additionally that the certification violates the Constitution. We disagree with both contentions.
 
 
 24
 a. Violation of the RLA
 
 
 25
 As we noted in British Airways, "[i]nspection of the [RLA] reveals that there are relatively few commands capable of being violated." 685 F.2d at 56. Nonetheless, the district court found that the NMB had grossly violated the statute by including in the representation election individuals who were not "employees" of Virgin.
 
 
 26
 Section 2, Ninth of the RLA provides that when a dispute arises among a carrier's employees as to the identity of their representative "it shall be the duty of the Mediation Board, upon request of either party to the dispute, to investigate such dispute and to certify ... the name or names of the [representative] designated and authorized to represent the employees." 45 U.S.C. § 152, Ninth. That section permits, but does not require, the NMB to "take a secret ballot of the employees involved." Id.
 
 
 27
 Section 1, Fifth, defines "employee" for purposes of the RLA as "every person in the service of a carrier (subject to its continuing authority to supervise and direct the manner of rendition of his service) who performs any work defined as that of an employee or subordinate official in the orders of the Interstate Commerce Commission." 45 U.S.C. § 151, Fifth. Virgin argues that, because a federal district court denied the challenged voters reinstatement, the NMB could not include them among the "employees" for purposes of the vote.
 
 
 28
 However it is the NMB, not the federal judiciary, that determines voter eligibility in elections held pursuant to the RLA. Section 2, Ninth of the statute explicitly states that "[i]n the conduct of any election for the purposes herein indicated the Board shall designate who may participate in the election and establish the rules to govern the election." 45 U.S.C. § 152, Ninth (emphasis added).
 
 
 29
 The NMB has established a regulation that governs the participation by discharged employees in representation elections. 29 C.F.R. § 1206.6 states, in pertinent part:
 
 
 30
 Dismissed employees whose requests for reinstatement [on] account of wrongful dismissal are pending before proper authorities ... are eligible to participate in elections among the craft or class of employees in which they are employed at time of dismissal. This does not include dismissed employees whose guilt has been determined, and who are seeking reinstatement on a leniency basis.
 
 
 31
 29 C.F.R. § 1206.6. Virgin claims that because the four dismissed employees' claims for reinstatement were no longer "pending" when the votes were actually counted, inclusion of their votes violated the regulation.
 
 
 32
 However, the NMB has a practice that "[w]hen the ballots in an election are impounded because of a question which requires resolution prior to the count, and the impounding results in a delay of the count beyond the count date ... the status quo as it existed on the original count date must be preserved in order to prevent any change in the outcome as it would have been in the absence of the delay." Altair Airlines, 7 NMB No. 254 (1980) (emphasis added); see also Continental Airlines, 14 NMB No. 29 (1987); Trans World Airlines, 13 NMB No. 64 (1986). Nothing in 29 C.F.R. § 1206.6 or the RLA prohibits such a practice.
 
 
 33
 The NMB followed this practice here by, on April 27, counting the votes as they were on April 25, the original count date. On April 25, the four challenged voters had pending actions for reinstatement. Therefore, the NMB did not violate the regulation or the statute by counting the four ballots.
 
 
 34
 Moreover, a major concern of an NMB representation investigation is to "insure the choice of representatives by the employees without interference, influence, or coercion exercised by the carrier." 45 U.S.C. § 152, Ninth (emphasis added); see Virginian Railway v. System Federation No. 40, 300 U.S. 515, 545-47, 57 S.Ct. 592, 598-99, 81 L.Ed. 789 (1937). The NMB may properly use its power to designate participants in elections to counteract or prevent carrier influence in the choice of a representative by the employees. In British Airways for example, we refused to examine the propriety of a certification where the NMB held an election among employees two years after determining voter eligibility. 685 F.2d at 54-56.
 
 
 35
 Nothing in the RLA requires the NMB to stay elections pending resolution of a dispute over an allegedly wrongful discharge. Moreover, nothing in the statute mandates that, having once told the carrier that the election would be stayed, the NMB may not reverse its decision.
 
 
 36
 In short, the NMB did not violate any command of the RLA. Therefore, the district court erred in setting aside the certification on the ground that the NMB had grossly violated the statute.
 
 
 37
 b. Constitutional Concerns
 
 
 38
 Virgin claims that the certification violated its right to due process of law guaranteed by the Fifth Amendment because the NMB violated (1) its own internal procedures and (2) the regulations set forth in the federal register. "[I]t is clear that the internal procedures manual of an executive agency does not create due process rights in the public." Lynch v. United States Parole Comm'n, 768 F.2d 491, 497 (2d Cir.1985). Thus, we need not address whether the NMB adhered to its internal procedures. However, an agency's violation of a federal regulation relating to it may constitute a violation of due process. See Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954); International House v. NLRB, 676 F.2d 906, 912 (2d Cir.1982). Virgin argues that, by counting the votes of four discharged employees, the NMB violated 29 C.F.R. § 1206.6. As noted above, the inclusion of the four challenged votes did not violate that regulation given the NMB's practice of maintaining the status quo in the face of delays in the count of votes. Therefore, the NMB did not violate Virgin's due process rights.
 
 
 39
 Several Virgin employees join Virgin in objecting to the NMB certification of the Union as the employee representative. These individuals claim that the certification violated their First Amendment right of free association. They claim that the First Amendment guarantees them the right not to be represented by a group chosen by less than a majority of their co-workers.
 
 
 40
 Not surprisingly, there is little support for such a proposition. The First Amendment right of free association has never been held to mandate "majority rule" in the labor relations sphere. If the First Amendment did protect individuals from being represented by a group that they do not wish to have represent them, it is difficult to understand why that right would cease to exist when a majority of the workers elected the union. See Railway Employes' Department v. Hanson, 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112 (1956) (upholding "union shop" provisions of the RLA against First Amendment challenges); International Ass'n of Machinists v. Trans World Airlines, 839 F.2d 809, 812 (D.C.Cir.) (disenfranchised employees did not have a First Amendment claim), cert. denied, 488 U.S. 820, 109 S.Ct. 62, 102 L.Ed.2d 40 (1988). The district court properly held that the certification in this case did not violate the First Amendment rights of any individual employee.
 
 
 41
 The NMB, therefore, did not violate any constitutional provision in certifying the Union as the representative of the Virgin employees. Because the NMB neither grossly violated the RLA nor violated the Constitution, the district court did not have the authority to set aside the certification. British Airways, 685 F.2d at 55. The certification should be reinstated.
 
 2. The Union's Counterclaims
 
 42
 The Union appeals from the district court's entry of summary judgment in favor of Virgin on the Union's counterclaims against Virgin. The Union asked the court for declaratory and injunctive relief, including a declaration that the NMB certification was valid, that Virgin's unilateral changes in working conditions and refusal to recognize the Union violated the RLA and that the strike against Virgin did not violate the RLA. The Union also asked the district court to order Virgin to bargain with the Union. In part because the district court held that the Union certification was invalid, the court dismissed these counterclaims.
 
 
 43
 As our discussion above indicates, the Union is entitled to a declaration that the certification is valid and that Virgin's refusal to bargain with the Union violated the RLA. As we stated with regard to this very situation in United Air Lines:
 
 
 44
 [T]he RLA is unambiguous with regard to the carrier's obligation once the NMB transmits that certification to the employer:
 
 
 45
 Upon receipt of such certification the carrier shall treat with the representative so certified as the representative of the craft or class for the purposes of this chapter.
 
 
 46
 45 U.S.C. § 152, Ninth (emphasis added). Thus, the carrier, Virgin, had an absolute duty under section 152 Ninth to sit down at the bargaining table with the union.
 
 
 47
 874 F.2d at 115. That "absolute duty" remains unfulfilled to this day and the Union is entitled to a declaration and an injunction to enforce that duty.
 
 
 48
 The Union also claims that Virgin violated section 2, Third and Fourth. Section 2, Third provides, in pertinent part, that "no carrier shall, by interference, influence, or coercion seek in any manner to prevent the designation by its employees as their representatives of those who or which are not employees of the carrier." 45 U.S.C. § 152, Third. Section 2, Fourth similarly prohibits employer interference in the selection of employee representatives. Id. § 152, Fourth. In support of this counterclaim, the Union asserts that Virgin discharged employees who were engaged in a strike designed to enforce the NMB certification and solicited employees to sign a prepared statement repudiating the Union. These actions, if proven, constitute interference by the carrier with the employees' selection of a representative. See NLRB v. Exchange Parts Co., 375 U.S. 405, 409, 84 S.Ct. 457, 459, 11 L.Ed.2d 435 (1964) (increase in benefits, if undertaken to discourage support for union, unlawful under the National Labor Relations Act (NLRA)); Nazareth Regional High School v. NLRB, 549 F.2d 873, 883 (2d Cir.1977) (under NLRA, coercion normally may be inferred from the fact that supervisors are involved in soliciting signatures on anti-union petitions); cf. Brotherhood of Railroad Trainmen v. Jacksonville Terminal Co., 394 U.S. 369, 383-84, 89 S.Ct. 1109, 1117-19, 22 L.Ed.2d 344 (1969) (cases construing NLRA may be helpful in construing similar provisions of RLA). The counterclaim states a claim for violation of 45 U.S.C. § 152, Third and Fourth. Therefore, the district court should not have summarily dismissed this counterclaim.
 
 
 49
 The Union further alleges that Virgin, by unilaterally altering rates of pay, violated section 2, First and Seventh of the RLA, 45 U.S.C. § 152, First and Seventh. Section 2, First imposes a general duty on carriers to "exert every reasonable effort" to make agreements concerning working conditions. 45 U.S.C. § 152, First. Section 2, Seventh states, in pertinent part:
 
 
 50
 No carrier ... shall change the rates of pay, rules, or working conditions of its employees, as a class as embodied in agreements except in the manner prescribed in such agreements or in section 156 of this title.
 
 
 51
 Id. § 152, Seventh. Section 156 of Title 45, section 6 of the RLA, in turn requires that carriers and representatives give each other thirty days written notice of "an intended change in agreements affecting rates of pay, rules, or working conditions."
 
 
 52
 As the district court recognized, the Supreme Court has held that the phrase "as embodied in agreements" limits this provision of the act to agreements reached after collective bargaining. Williams v. Terminal Co., 315 U.S. 386, 399-400, 62 S.Ct. 659, 667-68, 86 L.Ed. 914 (1942). In Williams, the plaintiffs, employees who had never engaged in collective bargaining with their employer, tried to halt unilateral changes in working conditions by the employer. At the time of the unilateral change in working conditions, one group of plaintiffs had authorized a representative under the RLA. That representative had, prior to the change, requested to bargain with the employer. The Court held that nothing in the RLA prevented changes prior to the actual existence of a collective bargaining agreement:
 
 
 53
 The institution of negotiations for collective bargaining does not change the authority of the carrier. The prohibitions of § 6 against change of wages or conditions pending bargaining and those of § 2, Seventh, are aimed at preventing changes in conditions previously fixed by collective bargaining agreements. Arrangements made after collective bargaining obviously are entitled to a higher degree of permanency and continuity than those made by the carrier for its own convenience and purpose.
 
 
 54
 Id. at 402-03, 62 S.Ct. at 668-69 (emphasis added).
 
 
 55
 The Supreme Court cast some doubt on the vitality of Williams' interpretation of section 2, Seventh in Detroit & Toledo Shore Line R.R. v. United Transportation Union, 396 U.S. 142, 90 S.Ct. 294, 24 L.Ed.2d 325 (1969). However, as the D.C. Circuit stated when faced with a similar problem, the Detroit & Toledo decision "plainly stops short of overruling Williams and leaves it binding in a case like the one before us where there has been 'absolutely no prior history of any collective bargaining or agreement between the parties on any matter.' " Trans World Airlines, 839 F.2d at 814 (citation omitted).
 
 
 56
 Although some courts have held that something less than a formalized collective bargaining agreement may be sufficient to trigger the status quo provisions of the RLA, see International Ass'n of Machinists v. Transportes Aereos Mercantiles, 924 F.2d 1005, 1008-10 (11th Cir.) (unratified agreement represented status quo), cert. denied, --- U.S. ----, 112 S.Ct. 167, 116 L.Ed.2d 131 (1991), here there was not even that. The Union and Virgin never bargained with each other. Therefore, section 2, Seventh, does not apply.
 
 
 57
 Similarly, where no steps toward bargaining have been taken, the unilateral alteration of rates of pay by an employer does not violate the section 2, First duty to "exert every reasonable effort" to make agreements. See Regional Airline Pilots v. Wings West Airlines, 915 F.2d 1399, 1402-03 (9th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 2891, 115 L.Ed.2d 1056 (1991); Trans World Airlines, 839 F.2d at 814-15. The district court properly dismissed this counterclaim under this provision of the RLA.3. Rule 11 Sanctions
 
 
 58
 In February 1989 the NMB made a motion to dismiss Virgin's action to set aside the Union certification. In that motion, the NMB argued that the district court did not have jurisdiction to review the certification, citing many of the cases and principles discussed above. The district court denied the motion. The district court recognized the limited nature of judicial review in this context, but held that on the precise facts of this case there was jurisdiction to review the certification.
 
 
 59
 Approximately sixteen months after the original motion to dismiss was denied by the district court the NMB filed what it characterized as a "Resubmitted Motion to Dismiss, or in the Alternative, for Summary Judgment." In its memorandum supporting that motion, the NMB argued that the principles that it had argued in its original motion had been "reaffirmed" by intervening case law.
 
 
 60
 The NMB argued that their motion was justified by Fed.R.Civ.P. 54(b), which provides, in pertinent part, that, unless the court expressly directs otherwise, any order or decision "is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Fed.R.Civ.P. 54(b). The NMB asserted that this provision impliedly allows motions requesting that the court reverse one of its earlier decisions.
 
 
 61
 The district court denied the motion. It held that the motion was in reality a motion to reargue the prior motion. As such, the motion was barred by a local rule that provided that such motions must be made within ten days. The district court held that the motion also should be denied based on the law of the case doctrine. It found that there was no significant new law presented in the motion. The district court found that the motion merely rehashed principles with which the court was familiar and that it had considered at the time of the first motion. The district court also held that the NMB's theory under Rule 54(b) was totally without merit.
 
 
 62
 In addition, the district court rejected the NMB's asserted reason for filing the motion. The NMB stated at oral argument before the district court that the reason for the motion was to place the case in a posture that would allow for an appeal. The court concluded that, because the NMB had repeatedly objected to entry of summary judgment for Virgin--a device that would have allowed for an appeal to this court--the NMB was insincere in its avowed reason for the motion.
 
 
 63
 The district court therefore held that that motion violated Fed.R.Civ.P. 11 (Rule 11) and ordered the NMB to pay the reasonable costs incurred by Virgin in opposing the motion. Rule 11 states in pertinent part:
 
 
 64
 The signature of an attorney or party constitutes a certificate by the signer ... that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
 
 
 65
 Fed.R.Civ.P. 11. The district court held that the filing of the motion was not justified by existing law or by a good faith argument for extension, modification or reversal of existing law. The court stated: "The reasons upon which the court based its denial of the motion were patent. Local Rule 3(j) and the law of the case doctrine, each of which was readily discoverable, would have counseled against the filing of this motion."
 
 
 66
 The NMB contends that the district court erred in finding that it violated the strictures of Rule 11 by making its second motion to dismiss. In reviewing the imposition of sanctions under Rule 11, "an appellate court should apply an abuse-of-discretion standard" to every aspect of the district court's ruling. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990). However, "[a] district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Id.
 
 
 67
 The NMB argues that because, as we hold today, it was correct on the merits of its motion to dismiss, the finding that the motion violated Rule 11 was an abuse of discretion. However, the district court did not impose sanctions on the NMB for the substance of its motion. The district court found that the NMB violated Rule 11 because making the motion at that juncture in the case, given Local Rule 3(j) and the law of the case doctrine, was not justified by existing law or a good faith argument for the extension, modification or reversal of existing law. Therefore, the fact that the NMB was correct on the merits of its motion does not mandate a determination that the Rule 11 sanctions constituted an abuse of discretion.
 
 
 68
 Although we hold today that the district court erred in denying the NMB's initial motion to dismiss, it was justified in denying the resubmitted motion based on the law of the case doctrine. See 1B J. Moore, J. Lucas & T. Currier, Moore's Federal Practice p 0.404[4.--1], at 124-26. Similarly, the district court was within its discretion in characterizing the NMB's "resubmitted" motion to dismiss as in reality a motion for reargument and thus barred as untimely under Local Rule 3(j).
 
 
 69
 The law of the case doctrine is admittedly discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment. See Arizona v. California, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983) ("Law of the case directs a court's discretion, it does not limit the tribunal's power."); First Nat'l Bank of Hollywood v. American Foam Rubber Corp., 530 F.2d 450, 453 n. 3 (2d Cir.) ("In this Circuit, the law of the case is a discretionary doctrine that need not be applied when no prejudice results from its omission.") (citation omitted), cert. denied, 429 U.S. 858, 97 S.Ct. 157, 50 L.Ed.2d 135 (1976). However, "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." Zdanok v. Glidden Co., 327 F.2d 944, 953 (2d Cir.), cert. denied, 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964). The major grounds justifying reconsideration are "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4478 at 790. Accord, Doe v. New York City Dep't of Social Services, 709 F.2d 782, 789 (2d Cir.) (discussing law of the case in the appellate context), cert. denied, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983). The district court explicitly found that none of those reasons was present in this case. Even if Rule 54(b) allows parties to request district courts to revisit earlier rulings, the moving party must do so within the strictures of the law of the case doctrine.
 
 
 70
 Given the deferential standard of review we must use in reviewing all aspects of a district court's imposition of Rule 11 sanctions, we cannot say that the court abused its discretion in finding that the NMB's position in making its motion was not justified. Judge Glasser's prior decision emphasized that there was jurisdiction to review the certification "[u]pon the precise facts of this case." None of the intervening cases cited in the NMB's memorandum supporting the resubmitted motion addressed the "precise facts of this case," or even closely similar facts. Judge Glasser's initial error in asserting jurisdiction was not so clear that the law of the case doctrine would be justifiably ignored. The imposition of the Rule 11 sanctions, therefore, was not an abuse of discretion.
 
 CONCLUSION
 
 71
 Because the procedures used by the NMB in determining the identity of the bargaining representative of the contested group of Virgin employees neither grossly violated the RLA nor raised any constitutional concerns, the district court had no power to review the certification of the Union in this case. The district court, therefore, also improperly dismissed some of the Union's counterclaims. Because there was no prior history of collective bargaining between the parties, however, the district court correctly concluded that Virgin's unilateral change in the terms and conditions of employment did not violate 45 U.S.C. § 152, Seventh. Moreover, the imposition of sanctions against the NMB for its resubmitted motion, given the court's prior narrow ruling on that subject, the local rule relating to reargument and the law of the case doctrine, was not an abuse of discretion and thus we affirm the imposition of those sanctions.
 
 
 72
 We therefore reverse the district court's invalidation of the NMB certification of the Union as the representative of the employees at issue here. With the exception of the dismissal of the Union's counterclaim under 45 U.S.C. § 152, Seventh, we reverse the dismissal of the Union's counterclaims. We affirm the imposition of sanctions against the NMB under Rule 11. We vacate the judgment and remand to the district court for further proceedings not inconsistent with this opinion.