874 F.2d 110
 131 L.R.R.M. (BNA) 2329, 57 USLW 2668,
111 Lab.Cas. P 11,134
 UNITED AIR LINES, INC., Plaintiff-Appellee,
v.
AIRLINE DIVISION, INTERNATIONAL BROTHERHOOD OF TEAMSTERS,
CHAUFFEURS, WAREHOUSEMEN & HELPERS OF AMERICA ("AIRLINE
DIVISION"); William Genoese, an officer of the Airline
Division; Local 851, International Brotherhood of
Teamsters, Chauffeurs, Warehousemen & Helpers of America
("Local 851"); Anthony Farina, an officer of Local 851,
Defendants-Appellants.
 No. 838, Dockets 88-7940, 88-7952.
 United States Court of Appeals,
Second Circuit.
 Argued March 13, 1989.
Decided May 4, 1989.
 
 James A. McCall, Washington, D.C. (Stephen H. Kahn, New York City, James T. Grady, Gen. Counsel, Int'l Broth. of Teamsters, Washington, D.C., on the brief), for defendants-appellants.
 Richard Schoolman, New York City (Eikenberry Futterman & Herbert, New York City, on the brief), for plaintiff-appellee.
 (John R. Bolton, Asst. Atty. Gen., Anthony J. Stfinmeyer, Constance A. Wynn, Civ. Div., Dept. of Justice, Washington, D.C., Andrew J. Maloney, U.S. Atty., Brooklyn, N.Y., submitted an amicus curiae brief for the Nat. Mediation Bd.)
 Before MESKILL and NEWMAN, Circuit Judges, and CONBOY, District Judge.*
 JON O. NEWMAN, Circuit Judge:
 
 
 1
 This appeal concerns the scope of a federal court's equitable powers in giving effect to the Railway Labor Act, 45 U.S.C. Secs. 151-163, 181-188 (1982) ("RLA"). The precise question presented is whether a court may enjoin secondary picketing that would otherwise be lawful because a union has failed to seek judicial enforcement of the primary employer's obligation to bargain. This question arises on an appeal from the granting of a preliminary injunction by the District Court for the Eastern District of New York (I. Leo Glasser, Judge) preventing the Airline Division of the International Brotherhood of Teamsters and Local 851 of the Teamsters [hereinafter "the union"] from picketing United Air Lines' ("United") Kennedy and Newark operations. The District Court ruled that a union must seek judicial enforcement of a carrier's bargaining obligation as part of the duty of all parties to "exert every reasonable effort ... to settle all disputes," 45 U.S.C. Sec. 152 First. We reject that interpretation of the RLA and therefore vacate the preliminary injunction.
 
 Facts
 
 2
 This dispute arises out of an effort by the union to organize twenty-two fleet service workers at Virgin Atlantic Airways ("Virgin"). In the course of an organization drive, the union commenced an action claiming that six employees had been discharged because of their support for the campaign. Before trial, two of the six discharged employees were rehired. The trial concerning the remaining four employees was held on April 25 and 26, 1988, coinciding with the counting of union certification election ballots. The National Mediation Board ("NMB") conducted the election pursuant to section 152 Ninth of the RLA to determine whether the union would represent the fleet service workers in collective bargaining.
 
 
 3
 Under the NMB's balloting rules, dismissed employees may vote in certification elections only if they have an action pending before a court for reinstatement due to wrongful dismissal. 29 C.F.R. Sec. 1206.6 (1988). On April 27, the District Court for the Southern District of New York (Louis L. Stanton, Judge) found that the four employees had not been wrongfully discharged. Hodges v. Virgin Atlantic Airways, Ltd., No. 88-1370 (S.D.N.Y. June 10, 1988) (date of final judgment). The NMB was informed of the District Court decision but nevertheless included the ballots of the four plaintiffs in the certification election count that same day.[1] These four votes swung the election in the union's favor and the NMB certified the union as the fleet service workers' bargaining representative.
 
 
 4
 Virgin refused to recognize the NMB's certification because of the inclusion of the discharged employees' ballots. The union repeatedly made overtures to Virgin to negotiate. Finally, unable to bring Virgin to the bargaining table, the fleet service employees, under the union's direction, struck Virgin on July 6, picketing the airline's Newark and Kennedy terminals. The union applied to the NMB to furnish mediation services pursuant to 45 U.S.C. Sec. 152 Ninth. At a scheduled mediation session on August 8, Virgin again refused to negotiate. The union then notified United that it was planning to engage in secondary picketing at United's Newark and Kennedy terminals. Virgin then fired the striking workers and, within a week, the union began their picketing of the United job sites. The District Court granted a temporary restraining order on August 23, enjoining the secondary picketing. It then converted that order to a preliminary injunction on September 30, 1988. 697 F.Supp. 616. Recognizing that the case was one of first impression that did not admit of an obvious resolution, Judge Glasser concluded that the duty imposed by the RLA upon all parties to "exert every reasonable effort ... to settle all disputes," 45 U.S.C. Sec. 152 First, required the union to seek judicial enforcement of its certification. We understand the Judge to mean that the union was required, prior to any primary picketing, to seek a court order compelling Virgin to bargain.
 
 Discussion
 
 5
 Our analysis of the validity of the District Court's injunction must reckon with competing congressional policies embodied in the RLA and the Norris-LaGuardia Act, 29 U.S.C. Secs. 101, 104 (1982), concerning the scope of federal courts' equitable powers in the resolution of labor disputes in the airline and railroad industries. The Norris-LaGuardia Act "expresses a basic policy against the injunction of activities of labor unions." International Ass'n of Machinists v. Street, 367 U.S. 740, 772, 81 S.Ct. 1784, 1802, 6 L.Ed.2d 1141 (1961). Enacted in 1932, the Act was intended to curtail widespread use of equitable relief by federal courts to prevent strikes, thus depriving unions of perhaps their most formidable weapon. See Burlington Northern R.R. v. Brotherhood of Maintenance of Way Employees, 481 U.S. 429, 107 S.Ct. 1841, 1847, 95 L.Ed.2d 381 (1987). Section 1 of the Act denies federal courts jurisdiction to issue an injunction in any case relating to a labor dispute.[2] Section 4 lists specific acts, including picketing, that may not be enjoined. See 29 U.S.C. Sec. 104.
 
 
 6
 The Supreme Court has held, however, that "[i]n certain limited circumstances, the Norris-LaGuardia Act does not prevent a court from enjoining violations of the specific mandate of another labor statute." Burlington Northern, 107 S.Ct. at 1850. In particular, the Act's "basic policy" against equitable relief "does not deprive the federal courts of jurisdiction to enjoin compliance with various mandates of the Railway Labor Act." International Ass'n of Machinists v. Street, 367 U.S. at 772, 81 S.Ct. at 1802 (citing Virginian Ry. v. System Federation No. 40, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789 (1937)). The RLA was enacted in 1926 following decades of often-violent labor unrest in the transportation industry that disrupted the national economy.[3] It is designed to deter strikes in this critical economic sector by requiring rail and air carriers and certified labor representatives to participate in protracted rounds of "negotiation, mediation, voluntary arbitration, and conciliation" before resorting to self-help. Detroit & Toledo Shore Line R.R. v. United Transportation Union, 396 U.S. 142, 148-49, 90 S.Ct. 294, 298-99, 24 L.Ed.2d 325 (1969). The Supreme Court has upheld the issuance of injunctions to prevent violations of various RLA provisions. See, e.g., Detroit & Toledo Shore Line R.R., supra (status quo requirement pending exhaustion of "major dispute" resolution procedures); Brotherhood of Railroad Trainmen v. Chicago River & Indiana R.R., 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957) (duty to arbitrate "minor disputes").
 
 
 7
 This is an unusual case in that the carrier and the union never initiated the RLA's mediation procedures. After Virgin rejected the union's overtures to negotiate, the union resorted to self-help. The District Court determined that the "various mandates" of the RLA required the union to go one step further--to seek judicial enforcement of its certification--before resorting to self-help. The validity of Judge Glasser's injunction turns, then, on whether he correctly assessed the union's legal obligations under the RLA once it met with Virgin's rebuff.
 
 
 8
 As the District Court properly observed, the union's right to engage in secondary activity is dependent upon the validity of its primary strike against Virgin. See Consolidated Rail Corp. v. Brotherhood of Maintenance of Way Employees, 792 F.2d 303, 304 (2d Cir.1986) (per curiam).[4] In Consolidated Rail, this Court held that when a union exhausts the RLA's grueling negotiation procedures with a primary employer, and thus gains the right to strike, a federal court may not require the union to go through those same procedures again with a secondary employer before engaging in secondary activity. Thus, once the union gains the right to engage in a primary strike under the RLA, a federal court may place no additional obstacles in the union's path before allowing it to picket a secondary employer. See also Burlington Northern, 107 S.Ct. at 1850-52. We disagree, however, with the Court's determination that the union failed to comply fully with the mandates of the RLA before engaging in its primary strike.
 
 
 9
 The District Court held that the union's failure to seek judicial enforcement of its certification violated section 152 First of the RLA. That section provides in pertinent part:
 
 
 10
 It shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce....
 
 
 11
 45 U.S.C. Sec. 152 First (emphasis added).
 
 
 12
 Judge Glasser reasoned that an enforcement action by the union was a required "reasonable effort" because it was virtually certain to result in a court order compelling Virgin to bargain. He also expressed the view that a union's legal burden in compelling a carrier to bargain is less onerous than a carrier's burden in persuading a court to set aside an NMB certification. Compare United States v. Feaster, 410 F.2d 1354 (5th Cir.), cert. denied, 396 U.S. 962, 90 S.Ct. 427, 24 L.Ed.2d 426 (1969), with British Airways Board v. National Mediation Board, 685 F.2d 52 (2d Cir.1982). In any event, he concluded, requiring resort to judicial remedies would delay and possibly avoid a strike. The District Court's reliance on section 152 First is not without foundation. The Supreme Court has held that the general language of that section is not hortatory but in fact creates a legal obligation enforceable by injunction. Chicago & North Western Ry. v. United Transportation Union, 402 U.S. 570, 91 S.Ct. 1731, 29 L.Ed.2d 187 (1971).
 
 
 13
 We are persuaded, however, that a somewhat narrower reading of section 152 First is warranted. In the recent Burlington Northern case, the Supreme Court acknowledged its holding in Chicago & North Western but suggested that injunctive relief should be granted sparingly under section 152 First and doubted that that provision could ever be used to prevent secondary activity:
 
 
 14
 In Chicago & North Western, we began by noting that the express language of Sec. First creates a duty to "exert every reasonable effort" to settle disputes. The only inference we drew here was that this duty was a legal obligation enforceable by injunction under certain circumstances. The language of Sec. First does not contain, however, either an express proscription of secondary activity or a suggestion that the scope of self-help is limited. Our currently narrow exception to the Norris-LaGuardia Act's prohibition on injunctions would expand to swallow the rule were we to permit courts to enforce by injunction the obligation petitioners infer here.
 
 
 15
 Burlington Northern, 107 S.Ct. at 1854 n. 15. In Burlington Northern, petitioners sought to establish a rule that the RLA bans secondary activity altogether, even after parties exhaust major dispute resolution procedures. Although the pending case stands in a somewhat different posture--since the parties have not started those procedures--we think Burlington Northern supports the proposition that courts should be circumspect about granting injunctive relief under section 152 First if parties have complied with the specific mandates set forth in other provisions of the RLA.[5]
 
 
 16
 The procedure governing union elections and certifications under the RLA is set forth in section 152 Ninth. Upon the request of either the carrier or its employees, the NMB must investigate any dispute over union representation and certify a bargaining representative within thirty days. In the course of investigating the dispute, the NMB may hold a secret ballot of employees to select a representative. The NMB is fully empowered to designate which employees may participate in the election, to fashion all procedural rules for the balloting, and, most importantly, to certify the winner of the election as the bargaining representative. Virgin may challenge the validity of that certification on limited grounds, see British Airways Board v. National Mediation Board, supra, but the RLA is unambiguous with regard to the carrier's obligation once the NMB transmits that certification to the employer:
 
 
 17
 Upon receipt of such certification the carrier shall treat with the representative so certified as the representative of the craft or class for the purposes of this chapter.
 
 
 18
 45 U.S.C. Sec. 152 Ninth (emphasis added). Thus, the carrier, Virgin, had an absolute duty under section 152 Ninth to sit down at the bargaining table with the union.
 
 
 19
 We see no reason to impose on the union the burden of seeking judicial enforcement of the carrier's bargaining obligation, when it is the carrier that has disobeyed the clear command of the statute. The Supreme Court held long ago that the union may enforce its certification rights by seeking an injunction ordering the carrier to bargain. See Virginian Ry. Co. v. System Federation No. 40, supra. We decline to change this "may" to a "must." The fact that a union might more easily win a court order compelling a carrier to bargain than a carrier might persuade a court to set aside a union's certification is an imbalance that simply recognizes the normal deference due an NMB certification. It is not a circumstance that converts the RLA's "best efforts settlement" obligation into a requirement that judicial remedies precede self-help. The union complied with the NMB's rigorous certification procedure, and the statute requires it to do no more before it is entitled to expect bargaining to begin. We may not impose on the union obligations that Congress has not seen fit to fashion, nor permit the enjoining of lawful, albeit inconvenient, picketing for failure to comply with a nonexistent obligation.
 
 
 20
 We conclude that the District Court applied an incorrect legal standard in assessing the union's duties under the RLA. That error undermines the validity of the preliminary injunction. See AMR Services Corp. v. International Brotherhood of Teamsters, 821 F.2d 162, 163 (2d Cir.1987) (per curiam). Under our interpretation of the union's duties, United cannot demonstrate a likelihood of success on its challenge to the union's secondary picketing, nor even sufficiently serious questions going to the merits. We have also considered appellee's alternative bases for supporting injunctive relief but find them lacking sufficient merit to warrant discussion.
 
 Conclusion
 
 21
 The preliminary injunction issued by the District Court is vacated.
 
 
 
 *
 The Honorable Kenneth Conboy of the District Court for the Southern District of New York, sitting by designation
 
 
 [1]
 We do not express any opinion regarding the validity of the NMB's decision to count the votes of the four discharged employees, as that issue is not before us. The NMB's certification is being challenged in a separate action brought by Virgin Airways currently pending in the Eastern District. Virgin Atlantic Airways, Ltd. v. National Mediation Board, No. 88-3163 (E.D.N.Y. filed Oct. 11, 1988)
 
 
 [2]
 Section 1 of the Act provides in pertinent part: "No court of the United States ... shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter...." 29 U.S.C. Sec. 101
 
 
 [3]
 In 1936, Congress extended the RLA to cover the then nascent airline industry. Act of April 10, 1936, ch. 166, 49 Stat. 1189-91 (codified at 45 U.S.C. Secs. 181-188 (1982))
 
 
 [4]
 Unlike the National Labor Relations Act, 29 U.S.C. Sec. 158(b)(4) (1982) ("NLRA"), the RLA does not ban secondary activity. See Burlington Northern R.R. v. Brotherhood of Maintenance of Way Employees, 481 U.S. 429, 107 S.Ct. 1841, 1850-55, 95 L.Ed.2d 381 (1987); see also Brotherhood of Railroad Trainmen v. Jacksonville Terminal Co., 394 U.S. 369, 378-79, 89 S.Ct. 1109, 1115-16, 22 L.Ed.2d 344 (1969). Congress excluded railway and airline carriers, and their employees, from the coverage of the NLRA. See 29 U.S.C. Sec. 152(2), (3)
 
 
 [5]
 Moreover, in Chicago & North Western, the Supreme Court suggested that injunctive relief under section 152 First may be limited to cases where parties have bargained in bad faith. 402 U.S. at 579 n. 11, 91 S.Ct. at 1736 n. 11. The record in our case is devoid of any evidence that the parties have acted in bad faith