**AIRCRAFT MECHANICS FRATERNAL ASSOCIATION, Plaintiff–Counter–Defendant–Appellant,**

v.

**ATLANTIC COAST AIRLINES, INC., Defendant–Counter–Claimant–Appellee.**

No. 1529, Docket 94–9230.

United States Court of Appeals, Second Circuit.

Argued Feb. 28, 1995.

Decided May 19, 1995.

Lee R.A. Seham, New York City (Louis Meltz, Seham, Seham, Meltz & Peterson) for plaintiff-counter-defendant-appellant.

Mark C. Bisnow, Sterling, VA, for defendant-counter-claimant-appellee.

Before: WINTER and PARKER, Circuit Judges, and BATTS, District Judge.*

PARKER, Circuit Judge:

This case involves a labor dispute between a newly certified union, the Aircraft Mechanics Fraternal Association ("the Union"), and an airline company, Atlantic Coast Airlines, Inc. ("the Airline"). After commencing collective bargaining under the provisions of the Railway Labor Act ("the Act"), 45 U.S.C. § 151 et seq., but prior to reaching an agreement, the Airline unilaterally changed certain terms of employment pertaining to the bargaining unit. The Union brought suit and sought a preliminary injunction to enforce the status quo during the bargaining process. In an order dated November 9, 1994, the district court (John S. Martin, Jr., J.) denied the Union's motion for preliminary injunction, and it is that decision which is now on appeal.

As a general rule, we review a district court's denial of a motion for preliminary injunction for abuse of discretion. *General Electric Co. v. New York State Dept. of Labor*, 891 F.2d 25, 26 (2d Cir.1989), *cert. denied*, 496 U.S. 912, 110 S.Ct. 2603, 110 L.Ed.2d 283 (1990); *Jack Kahn Music Co., Inc. v. Baldwin Piano & Organ Co.*, 604 F.2d 755, 758 (2d Cir.1979). But where, as here, no facts are in dispute and the district court's ruling turns solely on an interpretation of the law, our review is broader and we may decide the controlling legal dispute de novo, "rather than defer that decision until a further appeal which would follow the grant [or denial] of permanent relief." *Hagopian v. Knowlton*, 470 F.2d 201, 207 (2d Cir.1972);

* The Honorable Deborah A. Batts, of the United States District Court for the Southern District of New York, sitting by designation.

*see General Electric,* 891 F.2d at 26 ("[I]f we conclude that the district court's denial of plaintiff's motion for preliminary relief was based upon a misinterpretation of law that is basic to the issue of liability and may set a wrongful precedent, we have the power, and perhaps even the duty, to say so.").

In *Virgin Atlantic Airways, Ltd. v. National Mediation Board,* 956 F.2d 1245, 1253 (2d Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 67, 121 L.Ed.2d 34 (1992), this Court held that the Act permitted a carrier to make unilateral changes in a newly certified bargaining unit's conditions of employment when the union and the carrier had never bargained with each other. The question presented in this lawsuit is whether such changes are allowed after bargaining has commenced, and after the services of the National Mediation Board have been invoked, but before an agreement is reached. We answer the question in the affirmative.

## BACKGROUND

The relevant facts are straightforward and undisputed. On March 11, 1994, the Union was certified as the exclusive bargaining agent for mechanics employed by the Airline. Within the next few weeks, the Union commenced contract negotiations with the Airline pursuant to the terms of the Act. In August 1994, the Union declared an impasse and sought assistance from the National Mediation Board, which appointed a mediator.

In October 1994, the Airline posted notices indicating certain changes in the mechanics' terms of employment: sick leave would no longer be counted towards total hours worked in determining overtime pay, and the lead mechanic position was eliminated and replaced by a managerial position. At that time, no collective bargaining agreement was in place, and no mediation sessions had been held.

On November 2, 1994, the Union filed suit in the Southern District of New York and sought a preliminary injunction, arguing that the Act required each party engaged in collective bargaining to maintain the status quo pending completion of the Act's major dispute resolution procedures.[1] The district court properly exercised jurisdiction under the Act, *see Consolidated Rail Corp. v. Railway Labor Executives' Ass'n,* 491 U.S. 299, 303, 109 S.Ct. 2477, 2480, 105 L.Ed.2d 250 (1989) (district courts have jurisdiction to enjoin violation of status quo pending completion of dispute resolution procedures, "without the customary showing of irreparable injury"), and denied the motion for preliminary injunction.

## DISCUSSION

Four provisions of the Act are relevant to the arguments in this appeal, as follows:

It shall be the duty of all carriers, their officers, agents, and employees to *exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions,* and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof.

Section 2 First, 45 U.S.C. § 152 First (emphasis added).

No carrier, its officers or agents shall change the rates of pay, rules, or working conditions of its employees, as a class *as embodied in agreements* except in the manner prescribed in such agreements or in section 6 of this Act [45 U.S.C. § 156].

Section 2 Seventh, 45 U.S.C. § 152 Seventh (emphasis added).

The parties, or either party, to a dispute between an employee or group of employees and a carrier may invoke the services of the Mediation Board.... If such efforts to bring about an amicable settlement through mediation shall be unsuccessful, the said Board shall at once endeavor ... to induce the parties to submit their controversy to arbitration.... If arbitration at the request of the Board shall be refused by one or both parties, the Board

---

**1.** Major disputes under the Act are disputes involving the formation or modification of collective agreements; minor disputes relate to the interpretation of existing agreements. *Elgin, Joliet & Eastern Railway Co. v. Burley,* 325 U.S. 711, 723, 65 S.Ct. 1282, 1289, 89 L.Ed. 1886 (1945).

shall at once notify both parties in writing that its mediatory efforts have failed and *for thirty days thereafter,* unless in the intervening period the parties agree to arbitration, or an emergency board shall be created under section 10 of this Act, *no change shall be made in the rates of pay, rules, or working conditions or established practices in effect prior to the time the dispute arose.*

Section 5 First, 45 U.S.C. § 155 First (emphasis added).

Carriers and representatives of the employees shall give at least thirty days' written *notice of an intended change in agreements* affecting rates of pay, rules, or working conditions, and the time and place for the beginning of conference between the representatives of the parties interested in such intended changes shall be agreed upon within ten days after the receipt of said notice, and said time shall be within the thirty days provided in the notice. In every case where such notice of intended change has been given, or conferences are being held with reference thereto, or the services of the Mediation Board have been requested by either party, or said Board has proffered its services, *rates of pay, rules, or working conditions shall not be altered by the carrier until the controversy has been finally acted upon* as required by section 5 of this Act [45 U.S.C. § 155], by the Mediation Board, unless a period of ten days has elapsed after termination of conferences without a request for or proffer of the services of the Mediation Board.

Section 6, 45 U.S.C. § 156 (emphasis added).

■ Sections 2 Seventh and 6 of the Act expressly proscribe changes in wages and conditions of employment where an *agreement* is already in effect. The prohibitions on unilateral changes set forth in these sections "are aimed at preventing changes in conditions previously fixed by collective bargaining agreements." *Williams v. Jacksonville Terminal Co.,* 315 U.S. 386, 402–03, 62 S.Ct. 659, 668–69, 86 L.Ed. 914 (1942). Where no agreement is in effect, these prohibitions have no application. *Id.* On the other hand, where a collective bargaining agreement is in effect, the status quo freeze applies not only to the express provisions of the agreement, but also to the "objective working conditions and practices" not expressly embodied in the text of the agreement. *Detroit & Toledo Shore Line R.R. v. United Transportation Union,* 396 U.S. 142, 153, 90 S.Ct. 294, 301, 24 L.Ed.2d 325 (1969). Sections 2 Seventh and 6 of the Act simply do not impose an obligation on the carrier to maintain the status quo in the *absence* of an agreement. As we stated in *Virgin Atlantic,* 956 F.2d at 1253, "[t]he Court [in *Williams* ] held that nothing in the [Act] prevented changes prior to the actual existence of a collective bargaining agreement."

■ Further, the authority for enforcing the status quo sought by the Union cannot be found in section 2 First. Under that section, the carrier's affirmative duty to exert every effort to make collective agreements—that is, to bargain in good faith—does not require that it refrain from exercising "its authority to arrange its business relations with its employees" where no collective bargaining agreement is in effect. *Williams,* 315 U.S. at 402, 62 S.Ct. at 668. And aside from the disputed unilateral changes, the Union does not contend that the Airline has bargained in bad faith.

The Union relies heavily upon *International Ass'n of Machinists and Aerospace Workers v. Transportes Aereos Mercantiles Pan Americandos,* 924 F.2d 1005 (11th Cir.), *cert. denied,* 502 U.S. 855, 112 S.Ct. 167, 116 L.Ed.2d 131 (1991). The case is distinguishable. There, the bargaining between the newly certified union (IAM) and the employer occurred in the context where "a tentative agreement" had already been reached through collective bargaining during the previous union's tenure. *Id.* at 1006. At the commencement of bargaining between IAM and the carrier, the carrier had informed IAM "that such agreement contained the existing rates of pay, rules, and working conditions, *i.e.,* the status quo." *Id.* With that history in mind, the Eleventh Circuit concluded "that the district court properly restored the status quo and enjoined Tampa Airlines from making future unilateral changes." *Id.* at 1007. Without deciding

how we would hold in like circumstances, we note only that the specific facts supporting the Eleventh Circuit's decision in *International Association of Machinists* are absent in the present case.

 We next consider the Union's argument that an injunction freezing the status quo is warranted by section 5 of the Act, 45 U.S.C. § 155, because the parties had invoked the services of the Mediation Board prior to the Airline's unilateral changes in the mechanics' terms of employment. As quoted fully above, section 5 indeed prohibits changes in "the rates of pay, rules, or working conditions or established practices in effect prior to the time the dispute arose." But this prohibition is expressly triggered only upon the Mediation Board's notification to the parties "that its mediatory efforts have failed"—which did not occur here—and lasts "for thirty days thereafter."

Moreover, the status quo provision of section 5 cannot sensibly be read independently of section 6. An individual section of a statute should not be interpreted in isolation but as part of the entire statutory scheme. *See In re Lou Levy & Sons Fashions, Inc.,* 988 F.2d 311, 314 (2d Cir.1993). Under section 6, where there has been a "written notice of an intended change in agreements," the status quo must be maintained during any subsequent mediation process "until the controversy has been finally acted upon as required by section 5." Once that event occurs, the status quo freeze in place by virtue of section 6 continues in effect for thirty days pursuant to section 5 (unless an emergency board has been created under section 10, a provision that does not concern us here). The thirty-day freeze contained in section 5 is thus not free-standing but rather comes into play only after a section 6 "notice of an intended change in agreements." If section 5 is read otherwise, that is, as an independent status quo provision, it would have the irrational effect in a case like the present one of permitting unilateral changes during mediation while, after notice that mediatory efforts failed, requiring restoration of the terms and conditions of employment "in effect prior to the time the dispute arose."

The Union insists that public policy favors its interpretation of the Act's status quo provisions. Whatever the merits of the Union's views on public policy, the essential holding of *Williams* remains good law and controls the outcome of this case: A newly certified union that has no collective bargaining agreement with the carrier is not entitled to a status quo freeze under the Act.

Accordingly, we hold that the district court did not err in denying the Union's application for a preliminary injunction. The judgment is affirmed.