**AIRCRAFT MECHANICS FRATERNAL ASSOCIATION, Plaintiff–Counter–Defendant–Appellant,**

v.

**ATLANTIC COAST AIRLINES, Defendant–Counter–Claimant–Appellee.**

**No. 696, Docket 96–7611.**

United States Court of Appeals, Second Circuit.

Argued Jan. 30, 1997.

Decided Sept. 4, 1997.

Lee Seham, New York City, (Louis Meltz, Seham, Seham, Meltz & Petersen, New York City, of counsel), for Plaintiff–Appellant.

Paul D. Jones, Atlanta, GA (Ford & Harrison, Atlanta, GA, of counsel), for Defendant–Appellee.

Before: JACOBS, PARKER and HEANEY,* Circuit Judges.

Judge HEANEY dissents with a separate opinion.

* The Honorable Gerald W. Heaney, United States Circuit Judge for the Eighth Circuit, sitting by designation.

PARKER, Circuit Judge:

This case involves a continuing labor dispute between Aircraft Mechanics Fraternal Association ("Union") and Atlantic Coast Airlines ("Airline"). The Union is seeking a declaratory judgment establishing its right to engage in a work stoppage in view of the district court's earlier unpublished decision, affirmed by this Court, *Aircraft Mechanics Fraternal Ass'n v. Atlantic Coast Airlines, Inc.*, No. 94 Civ. 7915(JSM), 1994 WL 623061 (S.D.N.Y. Nov. 9, 1994), *aff'd*, 55 F.3d 90 (2d Cir.1995) (*"AMFA I "*), which held that sections of the Railway Labor Act, 45 U.S.C. § 151 *et seq.* ("RLA"), which proscribe unilateral changes in wages and conditions of employment where a collective bargaining agreement ("CBA") is in effect, do not impose an obligation on a carrier to maintain the status quo in the absence of a CBA.

On March 11, 1994, the Union was certified as the exclusive bargaining agent for certain aircraft maintenance personnel of the Airline. After commencing collective bargaining under the provisions of the RLA, but prior to reaching an agreement, the Airline unilaterally changed certain terms of employment pertaining to the bargaining unit. The Union sought a preliminary injunction prohibiting the changes on the ground that the RLA requires each of the parties engaged in collective bargaining to maintain the status quo until dispute resolution under the RLA is completed. In *AMFA I,* we affirmed the district court's denial of preliminary injunctive relief.

After *AMFA I,* the Union sought a declaratory judgment to establish that it had the right under the RLA to respond to the Airline's unilateral actions with self-help in the form of a work stoppage. The district court denied the requested relief in a Memorandum Opinion and Order dated December 15, 1995 (John S. Martin, Jr., *Judge* ). The court reasoned that the Union had an obligation under the good faith bargaining provision contained in RLA Section 2 First, 45 U.S.C. § 152 First, "to endeavor to reach an agreement in order to avoid work stoppages" and thus, was prevented from striking. *Aircraft Mechanics Fraternal Ass'n v. Atlantic Coast Airlines, Inc.*, No. 94 Civ. 7915(JSM),

1995 WL 753902, at *1 (S.D.N.Y. Dec. 18, 1995) (*"AMFA II "*).

The question presented on appeal is whether, absent the presence of a carrier's bad faith, a newly certified union is free under the RLA to engage in a work stoppage while negotiating the terms of its initial CBA with a carrier, even when the carrier has unilaterally altered the terms and conditions of employment. We agree with the conclusion of the district court that the RLA does not permit such action, and therefore affirm.

## I. BACKGROUND

On March 11, 1994, the same date the Union was certified as the exclusive bargaining agent for the bargaining unit, the Union served the Airline with a list of bargaining proposals. The parties commenced contract negotiations at a meeting held on March 29, 1994. By August 23, 1994, the Union advised the National Mediation Board ("NMB") that the intervention of a federal mediator was required because the parties had reached an impasse.

In October 1994, the Airline unilaterally altered the overtime wage payment practices for mechanics by implementing a new policy for accruing time toward determining overtime pay. The sick leave policy applicable to the represented group was also unilaterally changed. In addition, the Airline announced that it was eliminating the position of "lead mechanic," one of the job classifications in the represented unit, in favor of establishing a new managerial classification to assume the job functions formerly performed by lead mechanics.

In November 1994, the Union sought a preliminary injunction prohibiting the unilateral changes on the ground that the RLA requires each of the parties engaged in collective bargaining to maintain the status quo until dispute resolution under the RLA is completed. The Union's request for a preliminary injunction was denied, which denial was affirmed in May 1995 on appeal to this Court in *AMFA I.* We noted in that opinion that, though the Union disputed the unilateral changes instituted by the Airline, "the Union [did] not contend that the Airline [ ]

bargained in bad faith." 55 F.3d at 93. A federal mediator was appointed in December 1994. Negotiations are ongoing.

The Union then sought a declaratory judgment to establish that it had the right under the RLA to respond to the Airline's unilateral actions with self-help in the form of a work stoppage. In denying the requested relief, the district court held that the Union had an obligation under the good faith bargaining provisions of Section 2 First of the RLA "to endeavor to reach an agreement in order to avoid work stoppages" even where the employer unilaterally alters the terms and conditions of employment during the collective bargaining process, in the absence of a CBA. *AMFA II*, 1995 WL 753902, at *1. According to the district court, "the [Airline's] duty to exert a reasonable effort to reach an agreement was not necessarily breached because it implemented changes to working conditions." *Id.* The Union's decision to strike, however, would necessarily violate its duty to negotiate in good faith to avoid a work stoppage under the RLA. *Id.* This appeal followed.

## II. DISCUSSION

Congress passed the RLA to "encourage collective bargaining by railroads and their employees in order to prevent, if possible, wasteful strikes and interruptions of interstate commerce." *Detroit & Toledo Shore Line R.R. Co. v. United Transp. Union*, 396 U.S. 142, 148, 90 S.Ct. 294, 298, 24 L.Ed.2d 325 (1969). RLA Section 2 First requires the parties "to exert every reasonable effort to make and maintain agreements . . . in order to avoid any interruption to commerce or to the operation of any carrier. . . ." 45 U.S.C. § 152 First. The requirement that the parties attempt reasonably to reach agreements without work stoppages operates in concert with three status quo provisions in the Act. The fact that the status quo provisions may not be applicable in certain situations, however, does not negate the obligation of the parties under the RLA to exert every reasonable effort to resolve disputes.

The first status quo provision is provided by Sections 2 Seventh and 6, 45 U.S.C. §§ 152 Seventh and 156, and requires that any party desiring to effect a change of rates of pay, rules, or working conditions must give thirty days' written notice, during which time the status quo must be maintained. In *AMFA I*, we held that this provision was not applicable to the case at bar when we stated:

> Sections 2 Seventh and 6 of the Act expressly proscribe changes in wages and conditions of employment *where an agreement is already in effect.* The prohibitions on unilateral changes set forth in these sections "are aimed at preventing changes in conditions *previously fixed* by collective bargaining agreements."

55 F.3d at 93 (quoting *Williams v. Jacksonville Terminal Co.*, 315 U.S. 386, 402–03, 62 S.Ct. 659, 669, 86 L.Ed. 914 (1942)) (emphasis added). Therefore, we concluded, "[w]here no agreement is in effect, these prohibitions have no application." *Id.*

Section 5 First, 45 U.S.C. § 155 First, contains the second status quo provision, which requires a thirty-day cooling-off period following the close of NMB proceedings (unless the parties agree to arbitration, or a Presidential Emergency Board is created), during which time the parties must refrain from any self-help measures and maintain the status quo.

The last status quo provision is contained in RLA Section 10, 45 U.S.C. § 160, and requires a continued freeze for thirty days following a report made by the Presidential Emergency Board to the President in situations where a Presidential Emergency Board is created.

Both Sections 5 and 10 are inapplicable here because the parties have not reached the negotiating stages under the RLA that would trigger these provisions. As noted, the mediation is ongoing.

Because none of the status quo provisions apply, our sole inquiry is limited to whether, in the absence of bad faith on the part of the Airline, the Union may engage in a strike, consistent with its obligation under Section 2 First to make "every reasonable effort" to reach agreement and to avoid interruption to "the operation of [the] carrier." 45 U.S.C. § 152 First. We agree with the district court that a strike is inconsistent

with the Union's duty to negotiate in good faith under the RLA in the absence of a finding of bad faith on the part of the employer. Although the good faith bargaining provision also applies to the Airline, in *AMFA I* we held:

> Under [Section 2 First], the carrier's affirmative duty to exert every effort to make collective agreements—that is, to bargain in good faith—does not require that it refrain from exercising "its authority to arrange its business relations with its employees" where no collective bargaining agreement is in effect.

55 F.3d at 93 (quoting *Williams,* 315 U.S. at 402, 62 S.Ct. at 669).

The Union relies primarily on *United Air Lines, Inc. v. Airline Div., Int'l Bhd. of Teamsters,* 874 F.2d 110 (2d Cir.1989), and *Detroit & Toledo.* However, those cases are distinguishable.

*United Air Lines* involved a newly certified union where negotiations never commenced because the airline refused to recognize the union's certification by the NMB. 874 F.2d at 112. The union retaliated by striking and engaging in primary and secondary picketing. *Id.* We vacated a preliminary injunction against secondary picketing issued by the district court. *Id.* at 115. Unlike the instant case, however, the carrier and the union never initiated the RLA's mediation procedures, and the carrier rejected outright the union's overtures to negotiate, thus "disobey[ing] the clear command of the [RLA]." *Id.* at 112–13, 115.

*Detroit & Toledo* is distinguishable because that case involved an existing CBA. This fact was central to the Court's statement:

> When the union moves to bring such a previously uncovered condition within the agreement, it is absolutely essential that the status quo provisions of the Act apply to that working condition if the purpose of the Act is to be fulfilled. If the railroad is free at this stage to take advantage of the agreement's silence and resort to self-help, the union cannot be expected to hold back its own economic weapons, including the strike. Only if both sides are equally re-

strained can the Act's remedies work effectively.

396 U.S. at 155, 90 S.Ct. at 302. *Detroit & Toledo* concerned the question of what constituted the status quo in a railroad labor dispute where the railroad instituted an action against the union for an order restraining them from striking, and the union counterclaimed to prevent the railroad from violating the status quo provisions of the RLA by establishing new outlying work assignments. *Id.* at 146–47, 90 S.Ct. at 297–98. The actual working conditions under the CBA did not include such new outlying work assignments; nor did the CBA expressly prohibit the establishment of such assignments. *Id.* at 154–55, 90 S.Ct. at 301–02. In affirming the denial of preliminary injunctive relief against the union, the Court stated in dicta that "[i]t could hardly be expected that the union would sit idly by as the [carrier] rushed to accomplish the very result the union was seeking to prohibit by agreement." *Id.* at 154, 90 S.Ct. at 301. The violation of the status quo was the controlling factor in that case. In *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.,* 956 F.2d 1245, 1253 (2d Cir.1992), we narrowly interpreted the holding of *Detroit & Toledo* to permit the recognition of objective working conditions as the status quo, but only where there is already a CBA in place. Here, in the absence of a CBA, there is no such status quo.

The right to strike does not arise in the absence of employer bad faith. Here, the Airline did what the law permitted it to do. As we noted in *AMFA I,* 55 F.3d at 93, the Union has not alleged that the Airline bargained in bad faith, and the Union has continued to refrain from making such allegations. Obviously there has been no court finding of bad faith. Accordingly, the Union cannot legally strike.

■ Though we are sympathetic to the Union's argument that it is in a relatively powerless position under the circumstances to effectively oppose or influence the Airline's decision to make unilateral changes not prohibited by the RLA in the absence of a CBA, and in the absence of bad faith by the Airline, the concept of fairness alone will not

permit the Union to do what it is statutorily prohibited from doing.

### III. CONCLUSION

For the reasons stated above, we affirm the district court's denial of the Union's motion.

HEANEY, Circuit Judge, dissenting.

I respectfully dissent. The obligation to bargain in good faith is a mutual one. If the RLA is to be effective in its promotion of the resolution of labor disputes without work stoppages, the parties must be either equally restrained or mutually entitled to engage in economic self-help in pursuit of their lawful objectives. The majority establishes a double standard as to what constitutes good faith bargaining. A carrier remains in good faith while unilaterally making at-will changes in the wages, hours, or working conditions of its employees during the course of negotiations, *AMFA I*, 55 F.3d 90, 94 (2d Cir.1995), while a union is devoid of self-help in all but the rare case in which the union can prove the carrier is negotiating in "bad faith." The majority opinion is unsupported by legal precedent and is inconsistent with the RLA.

In *AMFA I* we held that a carrier has a right to make unilateral changes in the wages, hours, and working conditions of employees in the absence of a CBA. In reaching this decision, we held that the status quo provisions of the RLA were not applicable during negotiations for an initial CBA and that the Section 2 First general provision that parties to negotiations exert every reasonable effort to reach an agreement did not prevent the carrier from making the changes as long as the carrier bargained in good faith. We did not address whether a union could respond to the carrier's changes with a reasonable exercise of economic selfhelp.[1] Now, the majority would answer this question by creating a requirement that the union show that the carrier acted in bad faith be-

fore permitting the union to respond to the carrier's unilateral changes. The majority asserts that "a strike is inconsistent with the Union's duty to negotiate in good faith" and therefore proscribed by the RLA in the absence of a finding of bad faith by the carrier. They fail to explain why union self-help is inconsistent with negotiating in good faith while carrier self-help is not.

The United States Supreme Court recognizes the right of a union to exercise self-help without regard to a carrier's good or bad faith acts. *Detroit & Toledo Shore Line R.R. v. United Transp. Union*, 396 U.S. 142, 155, 90 S.Ct. 294, 302, 24 L.Ed.2d 325 (1969). The Court stated that, "[i]f the [carrier] is free ... to take advantage of [an] agreement's silence and resort to self-help, the union cannot be expected to hold back its own economic weapons." *Id.* The majority distinguishes *Detroit & Toledo* by pointing out that in that case a CBA was in effect, even though the CBA did not address the terms changed by the carrier. I do not find any logical relevance to this distinction. Whether a CBA is in effect goes only to the question of whether the status quo provisions of the RLA bind the parties. The general requirement of Section 2 First applies to both parties whether the status quo provisions do or do not apply. A strike is not per se inconsistent with the RLA regardless of whether the carrier has acted in bad faith. *See Brotherhood of Ry. & S.S. Clerks v. Florida E. Coast Ry. Co.*, 384 U.S. 238, 246, 86 S.Ct. 1420, 1424, 16 L.Ed.2d 501 (1966) (recognizing availability of self-help to both sides of labor management controversy when all mediation provisions of RLA have been exhausted). The majority cites no authority for now holding that Section 2 First has a different meaning where the status quo provisions have no effect. *See Burlington N. R.R. v. Brotherhood of Maint. of Way Emps.*, 481 U.S. 429, 451 n. 15, 107 S.Ct. 1841, 1854 n. 15, 95 L.Ed.2d 381 (1987)

---

1. Whether a union may respond to carrier self-help with its own is a novel issue. The issue is novel because the Eleventh Circuit is the only other circuit to address the question answered in *AMFA I*, and that circuit reached a different conclusion. *See International Ass'n of Machinists & Aerospace Workers v. Transportes Aereos*

*Mercantiles Pan Americandos, S.A.*, 924 F.2d 1005, 1007 (11th Cir.1991) (precluding management from "making unilateral changes in working conditions after the onset of negotiations directed toward adoption of an initial bargaining agreement").

("[Section] 2 First does not contain ... a suggestion that the scope of self-help is limited.").

The majority relies on *Virgin Atl. Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1253 (2d Cir.1992), to limit the Supreme Court's holding in *Detroit & Toledo*.[2] In *Virgin Atlantic*, we held that a carrier had not violated the general duty to exert every reasonable effort to make an agreement when the carrier made unilateral changes in the rates of pay prior to the commencement of negotiations between the carrier and a newly certified union. Although I agree with the decision, I point out that in *Virgin Atlantic* we addressed whether the employer could make unilateral changes rather than whether the union could reasonably respond with its own economic self-help. Moreover, *Virgin Atlantic* only addressed the carrier's right to make such changes where no negotiations had commenced. Here the parties had negotiated for six months prior to the carrier's changes.

In *United Air Lines, Inc. v. Airline Div., Int'l Bhd. Of Teamsters*, 874 F.2d 110, 115 (2d Cir.1989), this court held that a union was not prohibited from striking where a carrier refused to negotiate with the union. We reasoned that the carrier's refusal to recognize the union as the certified bargaining unit justified the union in exercising its right to strike. Id. Rather than imposing the majority's requirement to show the carrier's refusal was in bad faith, United Air Lines properly considered whether the union's decision to strike was reasonable. We determined that where the union complied with the certification procedures of the National Mediation Board and the carrier refused to bargain, the court could not enjoin the union's "lawful, albeit inconvenient, picketing."

Id. I am confident that we considered the union's Section 2 First duty to exert every reasonable effort to reach an agreement when we determined that the strike was lawful under the RLA.

We have no right to create a requirement that a union prove bad faith by a carrier before it can reasonably resort to economic self-help. We may not "impose on the union obligations that Congress has not seen fit to fashion." *United Air Lines, id.* at 115. Moreover, the result of the majority's rule frustrates the RLA's purpose to promote the resolution of disputes and creation of agreements between common carriers and unions. This rule transforms the RLA into a protective haven for carriers to make unilateral, at-will changes of employment conditions, so long as they maintain the appearance of negotiating. The courtroom now becomes the first step in the bargaining process.[3] A union must prove that the carrier is, in bad faith, avoiding an agreement that the carrier has no incentive to reach. Only then may a court permit the union to demonstrate even a threat of using its own economic tools to draw the carrier to the bargaining table.

The majority's opinion has the practical effect of enjoining the Union from exercising self-help in response to the Airline's unilateral changes. An injunction under the general provision of Section 2 First ought to be limited to cases where the party seeking the injunction has shown that the party to be enjoined is bargaining in bad faith. See *Burlington Northern*, 481 U.S. at 449, 107 S.Ct. at 1853 ("[A] federal court may enjoin a strike ... if a union does not comply with its obligation under Section 2 First of the RLA 'to exert every reasonable effort' to resolve the dispute."); see also *Chicago & N.W. Ry.*

---

**2.** The majority posits that *Virgin Atlantic* narrowly interpreted *Detroit & Toledo* "to permit the recognition of objective working conditions as the status quo, but only where there is already a CBA in place." I am perplexed by the majority's reading of the case. In *Virgin Atlantic*, we held that "where *no steps* toward bargaining have been taken, the unilateral alteration of rates of pay by an employer does not violate the [S]ection 2, First duty to 'exert every reasonable effort' to make agreements." *Virgin Atlantic*, 956 F.2d at 1253 (emphasis added). Requiring the commencement of negotiations to establish a status

quo is quite different from the requirement that a CBA be in place.

**3.** As we stated in *United Air Lines*, the Union's desire to respond to the Airline's unilateral changes "is not a circumstance that converts the RLA's 'best efforts settlement' obligation into a requirement that judicial remedies precede self-help." 874 F.2d at 115. Nonetheless, the requirement that the Union show the Airline made the changes in bad faith before the Union can strike does just that.

*v. United Transp. Union,* 402 U.S. 570, 579 n.11, 91 S.Ct. 1731, 1736 n. 11, 29 L.Ed.2d 187(1971) (suggesting that a bad faith finding should be made prior to issuing an injunction against self-help). The Airline has not shown, nor can it demonstrate, that the Union's desire to exercise self-help represents bad faith. On the contrary, the Union has negotiated with the Airline for over three years in an attempt to reach an agreement. Even here, the Union sought a declaratory judgment that it could strike rather than interrupting the operation of the Airline. The Union's desire to exercise self-help is reasonable and its motion for declaratory judgment should be granted.